Robert L. NITSCHKE, Appellant,

v.

**McDONNELL DOUGLAS CORPORATION,**
Appellee.

No. 95–1713.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1995.

Decided Oct. 18, 1995.

Terry A. Bond, Clayton, MO, argued, for appellant.

Thomas A. Mickes, St. Louis, MO, argued (Robert J. Tomaso, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and McMILLIAN, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

On November 6, 1992, McDonnell Douglas laid off Robert Nitschke, who was then 58 years old. Nitschke claims that McDonnell Douglas terminated him because of his age and therefore violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. The District Court[1] granted McDonnell Douglas's motion for summary judgment. We affirm.

I.

Robert Nitschke was a purchasing agent in the Maintenance Purchasing Section of McDonnell Douglas's Procurement Services Department. As part of a reduction in force (RIF), McDonnell Douglas decided to decrease the size of the Procurement Services Department from 37 to 32 employees and to terminate one of the Maintenance Purchasing Section's seven employees. In order to implement the RIF, McDonnell Douglas ordered all of the managers of the Procurement Services Department to rank employees based on their documented performance and productivity, versatility, skills, initiative, and relationships with co-workers. Nitschke ranked last among the employees in the Maintenance Purchasing Section. Citing this evaluation, McDonnell Douglas terminated him.

Nitschke relies heavily on statistical evidence to argue that age was the real reason why he was dismissed. Specifically, Nitschke points out that: the termination rate for employees in the Procurement Services Department who were older than 54 years of age was 344% higher than for the entire Department; the average age of the 32 retained employees was 41.84 years, as com-

1. The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

pared to 53.2 years for those who were terminated; and McDonnell Douglas did not lay off any employees in the Procurement Services Department who were younger than 40.

Nitschke has also come forward with some nonstatistical evidence. First, he notes that he received fairly positive evaluations in 1990 and 1992, had considerable work experience, and was hired, in November 1994, by McDonnell Douglas Technical Services Company. According to Nitschke, these facts show that he was qualified to continue working in the Procurement Services Department.

Next, he cites an excerpt from a document, entitled "Five Keys in Perspective," which was written in 1986 by John McDonnell, the President of McDonnell Douglas. In "Five Keys in Perspective," President McDonnell, who was outlining his "own personal view of MDC's new management initiatives," stated:

> In addition to the directly competitive argument for adopting the new culture, there is a less direct, but I believe, equally powerful reason—namely, our ability to hire and retain the best young people. The work ethic and motivations of people, especially younger people, are changing. No longer are young people willing to put up with the type of rigid, seniority-based command structure that has been the normal organizational form.

Finally, Nitschke points out that the three managers from the Procurement Services Department who were responsible for determining whom to lay off were under the age of 40.

The District Court held that Nitschke failed to present sufficient evidence to support a claim of age discrimination, either under the three-stage sequence of proof described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), or the mixed-motives test of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

■ We review the District Court's decision to grant summary judgment de novo, *Winegar v. Des Moines Indep. Com. School Dist.*, 20 F.3d 895, 898 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994). We will affirm if the record, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## II.

■ An age-discrimination plaintiff may rely on either direct or circumstantial evidence to prove that he has been the victim of unlawful discrimination. We will first consider whether Nitschke has built a strong enough case based on circumstantial evidence to withstand McDonnell Douglas's motion for summary judgment.

■ In order to prevail using circumstantial evidence, a plaintiff must first establish a prima facie case of age discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir.1994). To establish a prima facie case, an age-discrimination plaintiff who was dismissed pursuant to a RIF must show that: (1) he was at least 40 years of age at the time of his termination; (2) he satisfied the applicable job qualifications; and (3) he was discharged. The plaintiff must also "provide some 'additional showing' that age was a factor in the termination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir.1995) (quoting *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1165 (8th Cir.1985)). When the prima facie case has been established, the employer has the burden of producing evidence that he discharged the plaintiff "for a legitimate, nondiscriminatory reason." *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094). The burden then shifts to the plaintiff to prove that the reason provided by the employer was a pretext for discrimination. *Hutson*, 63 F.3d at 777.

■ The District Court assumed for the sake of argument that Nitschke had established a prima facie case. McDonnell Douglas articulated a nondiscriminatory reason for

Nitschke's dismissal—the RIF coupled with Nitschke's poor evaluation. We agree with the District Court that Nitschke has failed to come forward with enough evidence that McDonnell Douglas's explanation was a pretext for discrimination.

Nitschke's statistical evidence is insufficient to discredit McDonnell Douglas's explanation for his termination. In *Hutson,* we held that in order for a statistical comparison of employees to prove pretext, it must "analyze the treatment of comparable employees." *Ibid.*[2] Since McDonnell Douglas used performance evaluations to determine which workers to lay off, in order to prevail, Nitschke would have to show that McDonnell Douglas treated comparably rated employees differently. His statistical analysis ignores the performance evaluations and, therefore, does not prove that McDonnell Douglas's explanation was pretextual.

Nitschke's nonstatistical evidence is also deficient. He claims that his 1990 and 1992 evaluations, his work experience, and McDonnell Douglas's decision to rehire him in November 1994 show that he was a competent employee. If McDonnell Douglas had offered incompetence as the reason for Nitschke's termination, then evidence showing that Nitschke was competent would prove pretext. *Id.* at 779–80; *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991). However, McDonnell Douglas does not claim that it dismissed Nitschke because he was incompetent. Rather, it claims to have done so because, according to the performance criteria on which the employee rankings were based, Nitschke was the least competent employee in the Maintenance Purchasing Section. Therefore, Nitschke's evidence regarding his compe-

tence does not discredit McDonnell Douglas's explanation for his termination.[3]

As for "Five Keys in Perspective," in *Hutson v. McDonnell Douglas Corp.,* we rejected the plaintiff's argument that this document provided sufficient evidence to demonstrate that McDonnell Douglas's explanation for his dismissal was a pretext for discrimination. A plaintiff who is trying to prove pretext must show that there is a causal relationship between evidence of an employer's discriminatory attitude and the plaintiff's termination. *Hutson,* 63 F.3d at 778–79. We noted that "Five Keys in Perspective" was written six years before Hutson's dismissal, and that its author was not involved in the decision to terminate Hutson. Thus, we concluded that Hutson failed to prove the required causal relationship. *Id.* at 779. The same facts apply in Nitschke's case. Indeed, Nitschke does not even attempt to prove a causal relationship between "Five Keys in Perspective" and his layoff.

Nitschke also fails to establish any connection between his termination and the fact that the three managers who were responsible for determining which workers would be dismissed were under 40. In addition, the fact that Nitschke was rehired two years after his layoff may show that the defendant believed he was competent, but it also tends to show that McDonnell Douglas did not hold his age against him.

In sum, Nitschke has failed to produce substantial evidence that McDonnell Douglas's explanation for his layoff was a pretext for discrimination. He, therefore, has not met his burden of proof under *McDonnell Douglas.*

---

2. As we pointed out in *Hutson, MacDissi v. Valmont Industries, Inc.,* 856 F.2d 1054 (8th Cir. 1988), is not to the contrary. *Hutson,* 63 F.3d at 778. In *MacDissi,* although the plaintiff's statistics did not evaluate the treatment of comparable employees, we upheld a jury verdict finding that the plaintiff had proved pretext. But we based our holding on the fact that MacDissi had provided additional grounds for disbelieving his employer's explanation of his dismissal. Therefore, "*MacDissi* does not eliminate the requirement that statistics, to be meaningful indicators of pretext, evaluate the treatment of comparable employees." *Ibid.*

3. Nitschke has not introduced any evidence that the process by which McDonnell Douglas ranked employees was not uniformly applied. If Nitschke had proved that the rankings were the product of a discriminatory process, then he would have shown that McDonnell Douglas's explanation for his termination was a pretext for discrimination. See *Colgan v. Fisher Scientific Co.,* 935 F.2d 1407, 1422 (3d Cir.), *cert. denied,* 502 U.S. 941, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991).

## III.

 Nitschke also argues that he has come forward with enough evidence of discrimination to allow a jury to decide his case using the "mixed-motives" analysis outlined in *Price Waterhouse.* In "mixed-motives" cases, a plaintiff must offer proof that discrimination was "a motivating part in an employment decision." *Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1794 (opinion of Brennan, J.). The plaintiff cannot make this showing merely by introducing " 'stray remarks in the workplace,' 'statements by non-decision-makers,' or 'statements by decision-makers unrelated to the decisional process itself.' " *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991) (quoting *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804). Rather, he can present "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude...." *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993) (quoting *Ostrowski v. Atlantic Mutual Insurance Companies,* 968 F.2d 171, 182 (2d Cir.1992)). If the plaintiff satisfies this burden, then the "burden shifts to the employer to prove that it would have made the same decision even if it had not taken [age] into account." *Id.* at 448.

We agree with the District Court that Nitschke has not met his burden. In *Hutson,* we held that "Five Keys in Perspective," a document written in 1986 by an individual who was not involved in the decision to terminate Hutson did not supply enough evidence of age discrimination. 63 F.3d at 780. The same reasoning applies here. *Cf. Radabaugh,* 997 F.2d at 449 (holding that a reasonable factfinder could conclude that "corporate planning documents that set forth a company's overall direction and that demonstrate that a decisionmaker considers youth a positive factor" provide direct evidence of age discrimination).

Nitschke's other evidence is also unpersuasive. Even if it showed that there was a general discriminatory attitude at McDonnell Douglas (which it does not), "there must be a showing of a causal relationship between that attitude and the adverse employment action." *Hutson,* 63 F.3d at 780. Nitschke has not even attempted to establish this causal relationship.

## IV.

For these reasons, the judgment of the District Court is affirmed.