917 F.Supp. 671 (1996)
Milorad M. ROGIC, Plaintiff,
v.
MALLINCKRODT MEDICAL, INC., Defendant.
No. 4:95CV597 FRB.
United States District Court, E.D. Missouri, Eastern Division.
February 8, 1996.
*672 *673 David M. Heimos, St. Louis, MO, for Milorad M. Rogic.
Patricia M. McFall, John F. Kuenstler, McMahon and Berger, St. Louis, MO, for Mallinckrodt Medical, a Delaware corporation.

MEMORANDUM AND ORDER
BUCKLES, United States Magistrate Judge.
Presently pending before the Court are defendant's Motion for Summary Judgment as to Counts I and II of Plaintiff's First Amended Complaint (filed November 24, 1995); and defendant's Motion to Dismiss Count III for Failure to State a Claim Upon Which Relief Can Be Granted (filed June 5, 1995).[1] All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).
In this action, plaintiff claims that his employer, defendant Mallinckrodt Medical, Inc. (Mallinckrodt), unlawfully terminated plaintiff from employment on account of his age. *674 In Count I of his First Amended Complaint, plaintiff claims that defendant's actions violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 623, et seq. In Count II, plaintiff claims that defendant's actions violated the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. §§ 213.010, et seq. In Count III, plaintiff claims that his termination was intended to interfere with his attainment of retirement or other employee benefits to which he would have become entitled, in violation of Section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140.
In November 1986, defendant Mallinckrodt hired plaintiff as a Research Manager in Diagnostic Products Research and Development. Plaintiff was fifty-five years old. (Pltf.'s Depo. at 98-102, 115, 135.) Plaintiff's position was in the Organic Chemistry Department in the Science and Technology Division of Mallinckrodt. (Pltf.'s Depo. at 225.) Plaintiff worked directly for Dr. Dunn, Director of Organic Chemistry. (Pltf.'s Depo. at 137.) Dr. Dunn, in turn, reported directly to Dr. Deutsch, Vice President of Imaging for Research and Development. (Dunn Depo. at 48.) In 1989, plaintiff was promoted to the position of Associate Director of Organic Chemistry and supervised a number of subordinates. (Pltf.'s Depo. at 166; Pltf.'s Exh. 3.) Within one year, an organizational change in plaintiff's department resulted in a division of responsibilities within the department. (Pltf.'s Depo. at 166-67.) Plaintiff's title changed to Associate Director, Nuclear Medicine, Organic Chemistry, and plaintiff's responsibilities lessened. (Pltf.'s Depo. at 164-65.)
In 1990-91, a person who was previously plaintiff's subordinate was promoted to Director of Nuclear Medicine. (Pltf.'s Depo. at 188-89.) Plaintiff's position did not change. (Pltf.'s Depo. at 192.) Defendant hired an individual younger than plaintiff to replace one of plaintiff's subordinates. (Pltf.'s Depo. at 190-91.) In addition, responsibilities that had been assigned to plaintiff had been reassigned to younger individuals. (Pltf.'s Depo. at 303-04.)
During the summer of 1991, Dunn informed plaintiff that he intended to offer the position of Associate Director of Organic Chemistry, Nuclear Medicine, to another individual, Dr. Srinivasan. (Pltf.'s Depo. at 195.) Dunn indicated that he would like plaintiff to assume more responsibilities in a new position related to scientific computing. (Pltf.'s Depo. at 195.) Plaintiff created a job description for the new position with a brief analysis of the situation and the rationale for the position. (Pltf.'s Exh. P.) After expressing some doubt as to whether the position would enhance his career, plaintiff reconsidered the proposition and concluded that his "technical skills, professional judgment, and personal experience in [the] particular area could benefit [his] service to Mallinckrodt." (Pltf.'s Exh. P.) Therefore, plaintiff decided the position "would be a logical extension of [his] previous activities and contributions and that it would be both challenging and satisfying goal in [his] personal carrier [sic] development." (Pltf.'s Exh. P.) Plaintiff assumed the new position of Associate Director, Organic Chemistry, Computational Chemistry prior to October 1991. (Pltf.'s Exh. P, Pltf.'s Depo. at 194-98.)
Dunn's Performance Evaluation Review for the period of July 1991 to July 1992 was unfavorable to plaintiff. (Pltf.'s Depo. at 272-73.) Although plaintiff agreed with Dunn's assessment of his performance, plaintiff attempted to explain the reasons for such performance and requested Dunn's support of plaintiff's work activities. (Pltf.'s Exh. R.) Plaintiff received no response to his input regarding the evaluation. (Pltf.'s Depo. at 272-73.) Dunn's Performance Evaluation Review for the period of July 1992 to July 1993 was likewise unfavorable to plaintiff. (Deft.'s Exh. F.) Plaintiff met with Mary Monet, Vice President of Human Resources, to dispute the review. (Pltf.'s Depo. at 309-11.) With Ms. Monnet's assistance, plaintiff prepared a memorandum in September 1993 directed to Dr. E. Fox, Senior Vice President, New Technology and Chief Scientist, in an attempt to resolve the unfavorable review. (Pltf.'s Depo. at 336.) Dr. Fox informed plaintiff that the matter would be referred to Dr. Deutsch for resolution. (Pltf.'s Depo. at 338.)
*675 Dr. Deutsch conducted various meetings with plaintiff regarding Dunn's supervision of plaintiff and possible reassignment of plaintiff. (Pltf.'s Depo. at 355-59.) After consultation with plaintiff, Dr. Deutsch proposed that plaintiff take a year-long sabbatical with Washington University Mallinckrodt Institute of Radiology. Plaintiff accepted the position. (Pltf.'s Depo. at 364.) Plaintiff's sabbatical began July 1, 1994. (Deutsch Depo. at 79.)
In 1993, Mallinckrodt began exploring re-engineering and streamlining to make Mallinckrodt "a more competitive worldwide organization." Mallinckrodt developed a cost reduction goal of forty million dollars. While exploring re-engineering, it became apparent that sales force reorganization and reduction-in-force (RIF) would be necessary. It was made known to defendant's employees that an RIF would occur in the sales force. The Science and Technology Division was notified in October 1994 that it would be required to reduce its costs by fifteen percent. Over sixty positions in the company were eliminated in November 1994 as a result of RIF. (O'Connor Affid.) Thirteen such positions, including plaintiffs, were eliminated in the Science and Technology Division. (Deft.'s Exh. I.) Plaintiff was discharged on November 30, 1994. (O'Connor Affid.) Plaintiff was sixty-three years of age at the time of his discharge and was fully vested in all pension and retirement benefits which accrued to him under Mallinckrodt's Investment Plan for Employees and the Mallinckrodt Group Inc. Retirement Plan. (Deft.'s Exh. I; Brooks Affid. at 1-2.) In March and June 1995, defendant underwent additional RIF resulting in a complete reorganization of the Science and Technology Division. (O'Connor Affid.)
The recommendation to eliminate plaintiff's position and discharge plaintiff was made solely by Dr. Deutsch. (Deutsch Depo. at 47, 100; Dunn Depo. at 47.) Dr. Deutsch's only communication with Dunn regarding his recommendation was an inquiry as to the impact upon the department if the position were eliminated. Dunn's opinion played no role in Dr. Deutsch's recommendation. (Deutsch Depo. at 47, 100; Dunn Depo. at 47.) Plaintiff was involved in developing new data bases and new tools, and Dr. Deutsch determined that Mallinckrodt could contract with an outside supplier to perform such duties. (Deutsch Depo. at 49-50.) No aspect of plaintiff's performance was taken into account in the selection of plaintiff's position for elimination. (Deutsch Depo. at 79.)
Plaintiff claims that his discharge was on account of age discrimination on the part of defendant Mallinckrodt Medical, Inc., in violation of the Age Discrimination in Employment Act (ADEA) and the Missouri Human Rights Act (MHRA). Plaintiff further claims that his discharge was intended to interfere with his attainment of retirement or other employee benefits to which he would have become entitled, in violation of Section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140.

I. Motion for Summary Judgment  Counts I and II
Defendant moves for summary judgment as to Counts I and II of plaintiff's First Amended Complaint, claiming that there are no issues of material fact and that defendant is entitled to judgment as a matter of law. Specifically, defendant claims that plaintiff has failed to establish a prima facie case of age discrimination. Defendant further claims that its employment decision was based on a legitimate, non-discriminatory reason and that plaintiff has offered no evidence to rebut its legitimate reason. Plaintiff has responded to defendant's motion, to which defendant has replied.
Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. *676 Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.
Summary judgment is a harsh remedy and should not be granted unless the movant "has established his right to judgment with such clarity as to leave no room for controversy." New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir.1988).
A plaintiff alleging age discrimination may rely on direct or circumstantial evidence to prove that he was unlawfully discriminated against on account of age. Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir.1995). Plaintiff has not provided direct evidence of such discrimination, so the Court must determine whether plaintiff has provided sufficient circumstantial evidence to survive defendant's motion for summary judgment. Id.
Plaintiff must first establish a prima facie case of age discrimination. McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir.1994). To establish a prima facie case of age discrimination, a plaintiff discharged pursuant to an RIF must show that: 1) he was at least forty years of age at the time of his discharge; 2) he satisfied the applicable job qualifications; and 3) he was discharged. In addition, plaintiff must make some additional showing that age was a factor in his discharge. Nitschke, 68 F.3d at 251; Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776 (8th Cir.1995); Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1165-66 (8th Cir. 1985). If plaintiff can establish a prima facie case, the burden shifts to the employer-defendant to produce evidence that plaintiff was discharged for a legitimate, non-discriminatory reason. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); Nitschke, 68 F.3d at 251. Once the employer-defendant satisfies its burden, the burden shifts back to the plaintiff to prove that the reason provided by the defendant was a pretext for discrimination. Nitschke, 68 F.3d at 251; Hutson, 63 F.3d at 777. A plaintiff trying to prove pretext must show a causal link between evidence of an employer's discriminatory attitude and plaintiff's discharge. Nitschke, 68 F.3d at 252 (citing Hutson, 63 F.3d at 778-79.)

A. Plaintiff's Prima Facie Case

Defendant does not dispute that plaintiff has satisfied the first three factors in establishing his prima facie case, that is, that plaintiff was over forty years old, satisfied the job requirements, and was discharged. Defendant claims, however, that plaintiff has failed to make an additional showing that age was a factor in his discharge.
In an attempt to show that age was a factor in his discharge, plaintiff contends that Dr. Dunn exhibited an animus toward older employees in 1990-91 by bringing younger employees into the division and promoting others to superior positions within the division. Plaintiff points to Dunn's statement that he decided to "add new blood" to the division to show that age was factor in Dunn's employment decisions involving plaintiff. (Pltf.'s Oppos. at 4; Dunn Depo. at 107-08.) As further evidence, plaintiff points to a performance evaluation meeting he had with Dunn in 1991 or 1992, regarding work that needed to be done in computational chemistry, in which Dunn asked plaintiff when plaintiff planned to retire. (Pltf.'s Oppos. at 6; Pltf.'s Depo. at 433-34.) Plaintiff also asserts that in a June 1994 performance evaluation meeting, Dunn again asked plaintiff when he planned to retire. According to *677 plaintiff, Dunn explained that he needed to consider plaintiff's intent to retire when determining the "upcoming reorganization plans." (Pltf.'s Oppos. at 6; Pltf.'s Depo. at 435.) When plaintiff did not respond to the inquiry, Dunn intimated that he intended Dr. Miller to take on the responsibilities that plaintiff was performing at that time. (Pltf.'s Depo. at 436.) Dr. Miller is a younger individual than plaintiff. (Pltf.'s Depo. at 305.) Plaintiff also points to a conversation in July 1994 wherein Dunn commented that people would probably get offers for early retirement during the upcoming reorganization. (Pltf.'s Depo. at 434.) Dunn's comment was not directed to plaintiff personally, but rather to a group of people with whom Dunn was eating lunch, including plaintiff. (Pltf.'s Depo. at 434.) In addition, plaintiff claims that age was a factor in his discharge by asserting that he was the only and oldest employee in the Organic Chemistry Department discharged in the November 1994 RIF. (Pltf.'s Oppos. at 16; Dunn Depo. at 90-94.)
In light of the above, the undersigned finds for purposes of this discussion that plaintiff has made the required additional showing that age was a factor in his discharge, thus satisfying the elements necessary for plaintiff's prima facie case. First, plaintiff has made the additional showing by demonstrating Dunn's preference for younger employees in the business organization. See, e.g., Holley, 771 F.2d at 1166. In addition, the statements made by Dunn regarding plaintiff's retirement in conjunction with a younger individual assuming plaintiff's responsibilities can reasonably be taken to suggest that age was a factor in Dunn's evaluation of plaintiff. See, e.g., Hardin v. Hussmann Corp., 45 F.3d 262, 266 (8th Cir. 1995). The fact that the statements were made by a person not involved in the ultimate decision to discharge plaintiff is irrelevant to the "additional showing" inquiry involved in determining plaintiff's prima facie case. Hutson, 63 F.3d at 778.
Therefore, plaintiff has established a prima facie case of age discrimination regarding his discharge from Mallinckrodt in November 1994. The burden thus shifts to the employer-defendant to produce evidence that plaintiff was discharged for a legitimate, non-discriminatory reason.

B. Defendant's Legitimate, Non-Discriminatory Reason

Defendant claims that plaintiff's position was eliminated, and thus plaintiff was discharged, as part of a legitimate corporate-wide reduction-in-force designed to reduce defendant's costs by forty million dollars and to streamline Mallinckrodt to make it a more competitive organization. The Science and Technology Division, of which plaintiff's position was a part, was required to reduce its costs by fifteen percent. Plaintiff does not dispute the propriety of defendant's decision to implement a large-scale reduction-in-force. (Pltf.'s Oppos. at 14, 22.) A company's business decision to reduce its work force is a legitimate reason to discharge qualified employees. Hardin, 45 F.3d at 265. The company need not provide evidence of financial distress or objective criteria for determining who should be discharged to show that its RIF was legitimate. Id.; Bashara, 26 F.3d at 824-25. Therefore, defendant has shown that plaintiff's discharge was pursuant to a legitimate RIF.
In addition, defendant has articulated a non-discriminatory reason for eliminating plaintiff's position and terminating his employment. The Science and Technology Division in which plaintiff worked was required to reduce its costs by fifteen percent. Dr. Deutsch, the person recommending which positions were to be eliminated, determined that Mallinckrodt could reduce costs by eliminating plaintiff's position and contracting with outside suppliers to perform duties which plaintiff at that time performed.
Further, defendant has produced evidence that thirteen positions in the Science and Technology Division were eliminated and employees in those positions were discharged in the November 1994 RIF. Of those thirteen, four individuals were not within the protected age group. (O'Connor Affid., Attch. B; Deft.'s Exh. I.) In addition, during defendant's entire RIF, 139 individuals within the protected age group were not selected for job elimination in the Science and Technology Division, including three employees older *678 than plaintiff, while 121 individuals younger than the protected age group were not selected for job elimination. (Deft.'s Exh. G.) After the RIF was completed, the percentage of defendant's employees in the protected age group increased by over one percent. (O'Connor Affid.; Deft.'s Exh. E.) An RIF which increases the percentage of protected employees and increases the average age of employees cannot be viewed as discriminatory. Holley, 771 F.2d at 1167.
Therefore, in light of the above, the undersigned finds that defendant has produced evidence that plaintiff was discharged for a legitimate, non-discriminatory reason. Thus, in order to survive defendant's motion for summary judgment, plaintiff must prove that the reason provided by the defendant was a pretext for discrimination and show a causal link between evidence of defendant's discriminatory attitude and plaintiff's discharge.

C. Lack of Pretext or Causal Link

Although plaintiff does not dispute the legitimacy of defendant Mallinckrodt's decision to implement a large scale RIF, plaintiff claims that the RIF "was merely a pretext to terminate Plaintiff on the basis of his age." (Pltf.'s Oppos. at 14.) In support of this argument, plaintiff claims that Dr. Dunn's employment decisions which reduced plaintiff's responsibilities were designed to make plaintiff a less-essential employee and thus an ideal candidate for RIF. In addition, plaintiff claims that defendant's efforts to include younger employees in its March and June 1995 RIF's were an attempt to cover up its discriminatory action against plaintiff inasmuch as defendant became aware in February 1995 of plaintiff's charge of discrimination as a result of his complaint to the Equal Employment Opportunity Commission. Plaintiff relies on Dunn's discriminatory statements and employment decisions regarding younger employees to show that Mallinckrodt's RIF was a mere pretext for its discriminatory action against plaintiff. This evidence, however, is insufficient to show such pretext or that age bore a causal relationship to plaintiff's discharge.
First, Dunn was not involved in the ultimate decision to eliminate plaintiff's position or to discharge plaintiff. Dr. Deutsch was solely responsible for the decision and did not rely on Dunn's input to make the decision. Plaintiff has provided no evidence to the contrary. Further, there is no evidence that Dunn's discriminatory comments toward plaintiff were made in the presence of those taking part in the decision to discharge plaintiff. Therefore, evidence of Dunn's discriminatory statements cannot support an inference of discrimination on the part of Mallinckrodt and falls short of the causal link required to be shown between Dunn's statements and plaintiff's discharge. See Hutson, 63 F.3d at 779; Frieze v. Boatmen's Bank of Belton, 950 F.2d 538 (8th Cir.1991).
Next, plaintiff argues that Dunn's employment decisions favoring younger individuals and decreasing plaintiff's responsibilities were designed to make plaintiff a less-essential employee and thus an ideal candidate for RIF. Plaintiff points to Dunn's employment decisions between 1989 and 1991 to support his argument. This evidence is insufficient to support a causal relationship between Dunn's employment decisions and plaintiff's discharge. First, as discussed above, Dunn was not involved in the decision to discharge plaintiff. Further, the actions of which plaintiff complains took place two to four years prior to Mallinckrodt executives exploring the idea of cost reduction and streamlining its corporation. In addition, when Mallinckrodt began exploring cost reduction in 1993, it focused on reducing its sales force. The Science and Technology Division, of which plaintiff's position was a part, was unaware that it would be affected by the RIF until October 1994, one month prior to plaintiff's discharge. Based on the evidence before the Court, a reasonable inference cannot be made that Dunn knew that his employment decisions in 1989 through 1991 would lead to plaintiff's position in November 1994 being eliminated through a reduction-in-force, when a reduction-in-force in plaintiff's department was not even contemplated until October 1994.
Plaintiff's argument that Dunn's decision in 1994 to transfer plaintiff's responsibilities to Dr. Miller, a younger individual, likewise fails to show pretext or a causal link. Dunn *679 informed plaintiff of this employment decision in June 1994. Plaintiff was scheduled to begin a year-long sabbatical on July 1, 1994. Dunn's decision to transfer some of plaintiff's responsibilities to another individual while plaintiff was on sabbatical is a reasoned business judgment inasmuch as plaintiff would be away from the department and thus not able to continue his same responsibilities. Further, plaintiff's decision to take a sabbatical was a result of negotiations and discussions with Dr. Deutsch, initiated by plaintiff, to relieve plaintiff of Dunn's supervision. Therefore, plaintiff's claim that his sabbatical taken in July 1994 was a result of Dunn's decision to bring younger individuals into the division and was another step in Dunn's plan to decrease plaintiff's responsibilities lacks merit and support. In addition, plaintiff's argument and evidence showing defendant to have spent money on equipment and training for Dr. Miller is insufficient to show a causal link between Dr. Miller's training and plaintiff's discharge inasmuch as the training was related to plaintiff's decision to take a sabbatical. The fact that Dr. Miller is a younger individual is inconsequential, merely fortuitous and insufficient to show pretext or a causal link between Miller's training and plaintiff's discharge. See Holley, 771 F.2d at 1167-68 (assuming plaintiff had established prima face case, argument that plaintiff's duties were assumed by younger individual failed to show pretext on the part of defendant). Although plaintiff has produced evidence that job responsibilities he held prior to his sabbatical were not completely eliminated but rather combined with those of a younger employee, this does not establish discriminatory intent on the part of defendant when viewed in the context of company cutbacks, such as a reduction-in-force. Holley, 771 F.2d at 1166 (citing Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1117 (6th Cir. 1980)).
In addition, plaintiff's argument that he was the only and oldest employee supervised by Dunn to be discharged in November 1994 is insufficient to withstand defendant's motion for summary judgment. Defendant argues that since January 1994, plaintiff no longer reported to Dunn in the Organic Chemistry Department but rather reported directly to Dr. Deutsch. (Dunn Depo. at 53, 120; Deutsch Depo. at 47.) However, a memo from Dr. Deutsch to plaintiff, dated May 26, 1994, states that plaintiff continued to "formally report to Jeff Dunn." (Pltf.'s Exh. 119, filed Jan. 22, 1996.) Although a factual dispute exists regarding the extent of Dunn's supervision of plaintiff in 1994, the dispute is immaterial inasmuch as the evidence presented and discussed above establishes that Dunn played no role in determining whether plaintiff should be discharged. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Therefore, plaintiff has failed to show a causal relationship between Dunn's supervision and plaintiff's discharge in November 1994.
Finally, plaintiff has failed to provide any evidence to support his argument that the RIF itself was merely a pretext to discharge plaintiff on the basis of his age, and that the discharge of younger employees after plaintiff's discharge was merely to cover up the discriminatory action toward plaintiff. First, plaintiff has presented no evidence to show that Mallinckrodt's attempt to reduce its costs by forty million dollars and resulting discharge of over 150 employees[2] through RIF from January 1994 through June 1995 was merely a pretext to terminate plaintiff's employment in November 1994. With respect to plaintiff's argument that Mallinckrodt's discharge of younger employees in March and June of 1995 was intended to cover up its discriminatory action toward plaintiff, plaintiff has provided no evidence supporting his claim and ignores evidence which shows that between January and November 1994, prior to plaintiff's discharge, Mallinckrodt discharged twenty-one employees who were less than forty years of age due to re-engineering efforts and RIF, while *680 only eleven employees in the protected age group were discharged. (Deft.'s Exh. I.)
In addition, the undersigned notes that plaintiff did not form any opinion regarding whether age played a factor in any employment-related decision until the time he was discharged in November 1994. (Pltf.'s Depo. at 236.) At that time, plaintiff retrospectively examined occurrences throughout his employment and determined that the only reason he could have been selected for discharge was because of his age. (Pltf.'s Depo. at 235.) Such subjective reactions, however, are insufficient to show defendant's discriminatory intent in discharging plaintiff. See Holley, 771 F.2d at 1168.
Therefore, for all of the foregoing reasons, the undersigned finds that plaintiff has failed to produce substantial evidence that Mallinckrodt's explanation for his discharge was a pretext for age discrimination. Nitschke, 68 F.3d at 252. Therefore, plaintiff has failed to meet his burden of proof and defendant should be granted judgment as a matter of law as to Count I of plaintiff's First Amended Complaint. Inasmuch as "federal employment discrimination decisions [are] `applicable and authoritative under the MHRA,'" Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir.1994) (quoting Lane v. Ground Round, Inc., 775 F.Supp. 1219, 1223 (E.D.Mo.1991) (citing Midstate Oil v. Missouri Comm'n on Human Rights, 679 S.W.2d 842, 846 (Mo.1984) (en banc))), defendant should be granted judgment as a matter of law as to Count II of plaintiff's First Amended Complaint as well.

II. Motion to Dismiss  Count III
In Count III of his First Amended Complaint, plaintiff claims that his termination was intended to interfere with his attainment of retirement or other employee benefits to which he would have become entitled, in violation of Section 510 of the Employee Retirement Income Security Act (ERISA), codified at 29 U.S.C. § 1140. Defendant moves to dismiss plaintiff's claim arguing that it fails to state a claim upon which relief can be granted. Specifically, defendant contends that because plaintiff was fully vested in the pension and welfare benefit plans, he cannot state a cognizable claim for interference with the attainment of pension rights. Because matters outside the pleadings will be considered in determining the instant motion, the undersigned will proceed with defendant's motion as one for summary judgment. See Rule 12(b), Federal Rules of Civil Procedure. The parties were notified of the Court's intent to treat the instant motion as one for summary judgment and given the opportunity to submit additional evidence in support of their respective positions. (See Order of Jan. 24, 1996.)
Claims brought under ERISA are to be determined under the same three-step analysis as ADEA cases. Rath v. Selection Research Inc., 978 F.2d 1087, 1089 (8th Cir. 1992) (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir.1988)). Plaintiff must first establish a prima facie case that interference with his pension benefits was a motivating factor in defendant's decision to discharge him. Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992); Dister, 859 F.2d at 1114-15. In addition, plaintiff must present evidence of a causal connection between his membership in an ERISA-qualified plan and his discharge. E.g., Little v. Cox's Supermarkets, 71 F.3d 637, 643-44 (7th Cir.1995); Kinkead v. Southwestern Bell Telephone Co., 49 F.3d 454, 456 (8th Cir.1995). This can be shown with circumstantial evidence. Kinkead, 49 F.3d at 456; Rath, 978 F.2d at 1090.
Plaintiff has come forward with no evidence, circumstantial or otherwise, to show a causal connection between his discharge and the attainment of retirement benefits. Plaintiff argues that because he was discharged within two years of reaching age sixty-five, "when his retirement benefits may have been larger" (Pltf.'s Oppos. at 1), that alone is prima facie evidence of defendant's interference with his pension rights. Plaintiff cites Humphreys v. Bellaire Corp., 966 F.2d 1037, 1044 (6th Cir.1992), and Dister v. Continental Group, Inc., 859 F.2d 1108, 1115 (2d Cir.1988), in support of his position. In Humphreys and Dister, plaintiffs met their burden of establishing a prima facie case by showing the close proximity of their discharge and the time at which their pension *681 benefits were to vest. Humphreys, 966 at 1043-44; Dister, 859 F.2d at 1115. Unlike plaintiffs in Humphreys and Dister, however, plaintiff here was fully vested in all benefits which he had accrued under Mallinckrodt's Investment Plan for Employees and the Mallinckrodt Group Inc. Retirement Plan. (Brooks Affid. at 1-2.) None of plaintiff's benefits were forfeited upon termination of his employment. (Brooks Affid. at 2.) Plaintiff's claim that he may have received larger benefits when he reached the age of sixty-five does not state a cause of action under ERISA. Gavalik v. Continental Can Co., 812 F.2d 834, 851 (3d Cir.) ("Proof of incidental loss of benefits as a result of termination will not constitute a violation of § 510"), cert. denied, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); Corum v. Farm Credit Servs., 628 F.Supp. 707, 718 (D.Minn. 1986) (plaintiff must show more than "lost opportunity to accrue additional benefits" to sustain § 510 claim); Baker v. Kaiser Aluminum & Chem. Corp., 608 F.Supp. 1315, 1319 (N.D.Cal.1984) ("The only evidence offered by plaintiff is that if he had not been terminated, he would have been able to accrue additional benefits.").
Therefore, because plaintiff has failed to present evidence of a causal connection between his membership in an ERISA-qualified plan and his discharge, he has failed to establish a prima facie case that interference with his pension benefits was a motivating factor in defendant's decision to discharge him. Further, inasmuch as it is undisputed that plaintiff was fully vested under defendant's Investment and Retirement Plans at the time of his discharge, plaintiff's claim that he may have received larger benefits when he reached the age of sixty-five does not state a cause of action under ERISA. Therefore, defendant should be granted judgment as a matter of law as to Count III of plaintiff's First Amended Complaint.
Accordingly,
IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment as to Counts I and II of Plaintiff's First Amended Complaint (filed November 24, 1995/Docket No. 28) is granted.
IT IS FURTHER ORDERED that defendant's Motion to Dismiss Count III for Failure to State a Claim Upon Which Relief can be Granted (filed June 5, 1995/Docket No. 7), considered by the Court as a motion for summary judgment, is granted.
IT IS FURTHER ORDERED that all other motions which remain pending in this cause are denied as moot.
Judgment shall be entered accordingly.
NOTES
[1] Defendant's motion to dismiss refers to plaintiff's ERISA claim raised as Count II of plaintiff's original complaint. On August 28, 1995, plaintiff was granted leave to amend his complaint and raised his ERISA claim as Count III of his First Amended Complaint. Thereafter, defendant was granted leave to renew its motion to dismiss as to plaintiff's ERISA claim. Thus, the undersigned will consider defendant's motion to dismiss as relating to Count III of plaintiff's First Amended Complaint.
[2] Deft.'s Exh. I shows that from January 1994 through March 1995, 138 employees were discharged due to re-engineering/RIF. During the same period, twenty-one employees accepted early retirement packages due to re-engineering. Statistics have not been presented to the Court regarding defendant's RIF from April through June 1995.