922 F.Supp. 229 (1996)
Linda L. HUMES, Plaintiff,
v.
McDONNELL DOUGLAS CORPORATION, Defendant.
No. 4:95CV00681 GFG.
United States District Court, E.D. Missouri.
April 12, 1996.
*230 *231 David M. Heimos, St. Louis, MO, for Linda L. Humes.
Michael P. Burke, Bryan Cave, St. Louis, MO, for McDonnell Douglas Corporation.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on defendant's motion for summary judgment. Document 18. Plaintiff has responded in opposition to the motion. Document 22. For the reasons set forth below, the motion is GRANTED.

I. BACKGROUND
Plaintiff Linda L. Humes commenced this action against her former employer, defendant McDonnell Douglas Corporation, pursuant to the Employee Retirement Income Security Act ("ERISA"). Plaintiff alleges that defendant terminated her from her employment in order to prevent her from attaining additional retirement benefits under defendant's retirement plan[1] in violation of § 510 of ERISA, 29 U.S.C. § 1140. Document 1 at 1-2.
The undisputed facts reveal that in 1990, defendant began to reduce its workforce due to a slow down in its defense business. Affidavit of Paul Scholten ("Scholten aff.") at ¶ 3. The McDonnell Douglas Electronics System Company ("Electronics"), a division of defendant, was significantly affected by the business slow down and by a number of program cancellations. Id. As a result, Electronics substantially reduced its workforce in St. Louis, from about 2300 employees in 1990 to approximately 350 employees by early 1994. Id. at 4.
Plaintiff began working for defendant in St. Louis in November 1965 as a clerk-typist. Humes depo. at 27-28. In March 1992, plaintiff was promoted to senior administrative secretary to Ken Anderson, an executive in Electronics. Id. at 36. Plaintiff worked for Anderson for two and one-half to three years. Id. As Anderson advanced to positions of greater responsibility, plaintiff accompanied him and assumed additional job duties. Id. at 41.
Anderson was laid off in April 1994. Id. at 46. Paul Scholten replaced Anderson and brought his own secretary with him. Id. at 46-47. Defendant then assigned plaintiff to work in Facilities Management on a sell-off of capital assets. Id. at 58-59. That project concluded in August 1994. Scholten aff. at ¶ 9. At about that same time and in conjunction *232 with defendant's continuing efforts at downsizing, management re-evaluated the need for clerical and support staff in Electronics and determined that one of the seven secretarial positions should be eliminated. Id. at ¶¶ 5-6. Scholten asked the managers in Electronics to rank the skills of each secretary based on six factors, each of which had a numerical point value. Id. at ¶ 7, exh. 1. Plaintiff received the lowest cumulative score. Id. at ¶ 8, exh. 2. Accordingly, defendant terminated plaintiff on August 30, 1994. Id. at ¶ 9.
When she was terminated, plaintiff was 49 years old and had been employed by defendant for over 29 years. She was fully vested in the retirement plan with 29.03 years of credited service and 28.68 years of aggregate benefit service. Document 22, exh. 3. Under defendant's retirement plan, an employee may become eligible for a Minimum Early Retirement Benefit ("MERB"), when the employee reaches the age of 55, if the employee has completed 30 or more years of aggregate benefit service. Id. The MERB adds $375.00 per month to an employee's retirement benefit. Id.
According to the plan administrator, in order to receive the MERB, an employee must meet the plan requirements as of the date of the layoff. Document 18, exh. B, tab 7 (Becker letter at 1). The plan requires the employee to have attained "age 55 with 30 or more years of aggregate Benefit Service" at the time of the layoff. Id. Thus, although plaintiff was close to 30 years of aggregate benefit service at the time of her layoff, to qualify for the MERB, she would have had to have been employed for approximately five more years. Id.
In its motion for summary judgment, defendant argues that (1) plaintiff cannot state a claim under ERISA because she is fully vested in her pension benefits; (2) plaintiff failed to produce sufficient evidence on defendant's intent to make a prima facie showing; and (3) defendant had legitimate business reasons for terminating plaintiff. Document 18.

II. DISCUSSION

A. Standard of Review

Summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, this Court views the evidence and all reasonable inferences which may drawn therefrom in the light most favorable to the nonmoving party. Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir.1992). The moving party must show the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).
In response to a properly supported motion, the nonmoving party may not rest on the allegations of the complaint, but must set forth specific facts, by affidavit or other evidence, which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257, 106 S.Ct. at 2514. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

B. ERISA Section 510

Section 510 of ERISA provides in pertinent part that "[i]t shall be unlawful for *233 any person to discharge ... a participant ... for the purpose of interfering with any right to which such participant may become entitled under [an employee benefit] plan." 29 U.S.C. § 1140. "Section 510 was designed primarily to prevent `unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir.1988) (quoting West v. Butler, 621 F.2d 240, 245 (6th Cir.1980)).[2]
Claims under § 510 are analyzed using the three-stage framework common to Title VII and ADEA cases. Kinkead v. Southwestern Bell Tel. Co., 49 F.3d 454, 456 (8th Cir.1995). The first step requires plaintiff to make a prima facie showing. If the plaintiff clears this hurdle, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Id. If the employer meets its burden, the plaintiff must produce evidence indicating that the proffered reason is pretextual. Id.

C. The Prima Facie Case

Defendant argues that it is entitled to summary judgment because plaintiff has not made a prima facie case. "To establish a prima facie case under ERISA § 510, an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3rd Cir.), cert. denied, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). Plaintiff must produce evidence demonstrating a specific intent on the part of the employer to interfere with her pension benefits. Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir.1992). In order to defeat defendant's motion for summary judgment, plaintiff must show that a genuine issue of material fact exists as to each element. Id.
Under § 510, the employer's intent to interfere with plaintiff's pension benefits need not be the sole reason for her termination, but plaintiff must produce evidence to show that it was a motivating factor in the decision. Dister, 859 F.2d at 1111. Plaintiff has the burden of demonstrating a causal link between her membership in an ERISA plan and her discharge. Rogic v. Mallinckrodt Medical Inc., 917 F.Supp. 671, 680-81 (E.D.Mo.1996). The causal connection may be established with circumstantial evidence. Kinkead, 49 F.3d at 456. But, "it is not sufficient for an employee to allege lost opportunity to accrue additional benefits as evidence of the employer's specific intent to violate ERISA." Conkwright, 933 F.2d at 239.
Defendant contends that plaintiff has failed to come forward with evidence sufficient to create a genuine issue of material fact on the critical issue of defendant's intent to interfere with her pension benefits. Plaintiff argues a genuine issue of material fact exists on defendant's intent based on evidence showing (1) her proximity to becoming eligible for the MERB, (2) the resulting savings of $375 per month to defendant, and (3) that she was closer to eligibility for the MERB than any of the secretaries retained by defendant. Document 22 at 8. Plaintiff further asserts that defendant's termination decision was based in part on defendant's desire to deprive plaintiff of her medical coverage for a known medical condition (a lump on her breast). Id. at 6.
*234 As plaintiff correctly points out, courts have held that an employee's proximity to vesting combined with substantial savings to the employer "provides at least some inference of intentional, prohibited activity." Humphreys, 966 F.2d at 1044; see Dister, 859 F.2d at 1115. The facts of these cases are instructive. In Humphreys, for example, plaintiff was terminated two months before his pension would have vested and his employer saved a substantial sum by terminating plaintiff at that time. 966 F.2d at 1043-44. Similarly, in Dister, the plaintiff was discharged four months and seven days before he would become vested in his pension, and the company saved $550,000 by discharging him. 859 F.2d at 1115.
Here, in contrast to Humphreys and Dister, plaintiff was fully vested in the pension benefits which she had accrued up to the time of her termination. She would have had to work another 16 months to complete 30 years of aggregate benefit service. Document 18, exh. C, tab 3. Based on this additional service, plaintiff's monthly retirement benefit would have increased by $121. Id. Plaintiff would not have been eligible for the $375 per month MERB, until October 25, 1999, over five years from the date of her termination. Id. at tab 4. Had plaintiff reached this milestone, her monthly benefit would have increased substantially, from $767 to $1776. Id. at tabs 1, 4.
The Court faced a similar factual situation in Newell. There, plaintiff was terminated due to a reduction-in-force, and her pension rights had vested at the time of her termination. Plaintiff's early retirement benefits would have vested in another five years. Newell, 1994 WL 880432 at *11. The Court concluded that plaintiff had failed to make a prima facie case, and distinguished the facts from Dister and Humphreys, stating: "Any possible inference of intentional interference is eliminated by the several years time-span between the date of lay-off and the date of vesting of any additional benefits." Id.; see also Rogic, 917 F.Supp. at 680-81 (rejecting plaintiff's claim that his termination within two years of reaching age 65, at which point additional benefits would accrue, satisfied element of intent where plaintiff was fully vested in benefits he had already accrued).
After viewing the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has failed to create a genuine issue of material fact as to defendant's specific intent to interfere with her retirement benefits. As evidence of defendant's intent, plaintiff asserts that she was closer to attaining eligibility for the MERB than any of the secretaries retained by defendant following the reduction-in-force. Defendant correctly points out, however, that Carole Wilson, one of the secretaries retained instead of plaintiff, was closer to eligibility for the MERB than plaintiff. Ms. Wilson had 30 years of service and was 52 years old at the time of plaintiff's termination. Ms. Wilson would become eligible for the MERB in three years, while plaintiff would not become eligible for five years. Moreover, because of the five-year period between the date of plaintiff's termination and the date she would become eligible for the MERB, plaintiff cannot rely on her proximity to attaining eligibility for the MERB as evidence of defendant's intent. See Newell, 1994 WL 880432 at *11.
Finally, plaintiff has failed to produce any evidence demonstrating a causal link between defendant's termination decision and her alleged medical condition. Plaintiff testified that, prior to her termination, she informed defendant's human resources director and a number of supervisory-level employees that she has a lump on her breast and that she needed to maintain her medical insurance coverage. Humes depo. at 166-71; 221-22. Of these employees, however, only Paul Scholten was involved in the termination decision. See Scholten aff. ¶ 7, tab 1. As defendant points out, however, mere knowledge of plaintiff's medical condition does not create an inference that defendant took this condition into account when making the termination decision. Moreover, plaintiff is not undergoing any treatment for this condition. She testified that her physician is simply monitoring it. Humes depo. at 166. Thus, defendant would have had no incentive to terminate plaintiff to avoid expensive medical treatment. Accordingly, the Court concludes *235 that plaintiff has failed to produce evidence sufficient to create a genuine issue of material fact as to defendant's intent.

D. Legitimate Business Reasons

Alternatively, assuming plaintiff made a prima facie showing on the issue of intent, defendant is still entitled to summary judgment because defendant has articulated legitimate business reasons for terminating plaintiff. A slow down in the defense industry business caused defendant to reduce its workforce substantially between 1990 and 1994. Scholten aff. at ¶ 3. After assessing its needs in Electronics, defendant determined that it was overstaffed by one secretary. Id. at ¶ 6. Defendant evaluated the secretaries, including plaintiff, based on a six-factor skill assessment dictionary. Id. at ¶ 7. Plaintiff ranked last of the seven secretaries. Id., exh. 2. Based on her ranking and the fact that the project she was working on had ended, plaintiff was selected for termination. Id. at ¶ 10.
Because defendant has articulated legitimate business reasons for plaintiff's termination, the burden shifts to plaintiff to produce evidence of pretext. See Kinkead, 49 F.3d at 456. To survive defendant's motion for summary judgment, plaintiff must produce evidence sufficient to create a genuine issue of material fact as to the validity of defendant's proffered justifications for the termination or as to defendant's motive for the termination. Dister, 859 F.2d at 1115.
Plaintiff has failed to come forward with any evidence to call into question the validity of the reasons defendant asserted for her termination. See Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir. 1992). Plaintiff concedes that defendant was entitled to reduce its workforce to compensate for the business downturn. Plaintiff argues evidence of pretext exists because she was closer to attaining the MERB than any of the secretaries defendant retained after the reduction in force. As noted above, however, Carole Wilson was closer to becoming eligible for the MERB than plaintiff. Moreover, the five-year period between the date of plaintiff's termination and the date of her eligibility for the MERB eliminates any possible inference of discriminatory motive or pretext that might be drawn from this evidence. See Humphreys, 966 F.2d at 1044-45.
The Court also notes that plaintiff has provided no evidence to suggest that defendant's competency ranking of its secretarial staff was pretextual. The fact that plaintiff ranked last among the remaining secretaries in Electronics undermines plaintiff's claim that defendant's decision to terminate her was a mere pretext for discrimination. See Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251-52 (8th Cir.1995) (need to reduce force combined with plaintiff's low performance ranking among remaining employees justified termination despite prior positive evaluations). Finally, as noted above, plaintiff failed to produce any evidence showing a causal connection between her medical condition and her termination.
Accordingly, the Court concludes that plaintiff has failed to submit evidence sufficient to create a genuine issue of material fact on the issue of pretext, and defendant is entitled to summary judgment as a matter of law.
NOTES
[1] Plaintiff participated in two plans: the Employee Retirement Income Plan of McDonnell Douglas Corporation  Salaried Plan and the Hourly East Plan. Document 18, exh. B, tab 7. For convenience, these plans will be referred to as the plan or the retirement plan.
[2] Defendant contends it is entitled to summary judgment because plaintiff, as a fully-vested participant in a pension plan, cannot state a claim under § 510. There is a split of authority on this issue. Several district courts within this circuit have held that "the language of § 510 precludes a cause of action by a plaintiff already fully vested in the pension plan." Newell v. McDonnell Douglas Corp., 1994 WL 880432, at *9 (E.D.Mo. Aug. 31, 1994); see Moehle v. NL Indus., Inc., 646 F.Supp. 769, 779 n. 6 (E.D.Mo. 1986), aff'd, 845 F.2d 1027 (8th Cir.1988) (table); Corum v. Farm Credit Servs., 628 F.Supp. 707, 717 (D.Minn.1986). Other courts have disagreed, holding that the plain language of the statute permits a fully-vested plan participant to state a cause of action under § 510 against an employer who acts to prevent accrual of additional benefits. See, e.g., Heath v. Varity Corp., 71 F.3d 256, 258 (7th Cir.1995); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 238 (4th Cir.1991). Because the Court concludes that defendant is entitled to summary judgment on other grounds, the Court need not address this issue.