929 F.Supp. 1260 (1996)
Epifania HERRERO, Plaintiff,
v.
ST. LOUIS UNIVERSITY HOSPITAL, et al., Defendants.
No. 4:95CV123 CDP.
United States District Court, E.D. Missouri, Eastern Division.
April 26, 1996.
*1261 *1262 *1263 Steven C. Banton, Partner, Rodney J. Stevens, Quinn and Ground, Manchester, MO, for Epifania Herrero.
Peter H. Ruger, Peter G. Yelkovac, Peper and Martin, St. Louis, MO, for St. Louis University Hospital, Greg Ruppel and Allen Hibbett.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on defendants' motion for summary judgment and on plaintiff's motion for leave to file her second amended complaint. Plaintiff, a sixty-one-year-old woman of Filipino national origin, was employed in defendant St. Louis University Hospital's ("SLUH") pulmonary function department from 1969 until her termination in 1994. Defendants Al Hibbett and Gregg Ruppel were both plaintiff's supervisors in SLUH's pulmonary function laboratory when she was terminated, and Ruppel was her supervisor in 1984 when her job title was changed.
Plaintiff's eleven-count first amended complaint alleges that defendants discriminated against her on the basis of her age, race and national origin, both when she was allegedly demoted in 1984 and when she was terminated in 1994; she also alleges that the 1994 termination was retaliation for her previous filing of an EEOC complaint regarding the alleged demotion. Counts I, II and V allege that defendants SLUH and Ruppel violated the following statutes in making the 1984 *1264 demotion: the Age Discrimination Employment Act, 29 U.S.C. § 621 (ADEA), 42 U.S.C. § 2000e et seq. (Title VII), 42 U.S.C. § 1981, and the Missouri Human Rights Act, § 213.010, R.S.Mo (MHRA). Counts VII and IX also relate to the 1984 demotion and allege that defendant Ruppel is liable for the common-law torts of intentional infliction of emotional distress and tortious interference with contract. Counts III, IV, and VI allege that defendants SLUH, Ruppel and Hibbett violated the ADEA, Title VII, § 1981, and the MHRA in terminating plaintiff in 1994. Counts VII, X, and XI also relate to the 1994 termination and allege that defendants Ruppel and Hibbett are liable for the common-law torts of intentional infliction of emotional distress, tortious interference with contract, and civil conspiracy.
As discussed in more detail below, plaintiff was terminated as part of a reduction in force at SLUH. Her evidence of discrimination consists of her own perceptions of unfairness and mistreatment by her co-workers and superiors, and several comments made over the years by her co-workers and her superiors. The evidence presented shows that there is an absence of any genuine issue for trial, and as a matter of law plaintiff cannot prevail on any of the theories she has presented. Therefore the motion for summary judgment will be granted. Because the proposed second amended complaint does nothing to save plaintiff's claims from summary judgment, and because it was filed months after the deadline for filing such motions set by the Court after consultation with plaintiff's counsel, the request for leave to amend the complaint will also be denied.

I. Facts[1]
Plaintiff Epifania Herrero was employed by St. Louis University Hospital in August 1969. SLUH promoted plaintiff to respiratory therapist in 1978, and to "pulmonary laboratory technician" in 1979. Plaintiff' title was changed to "blood gas technician" in February 1984, although her salary and duties remained unchanged. This change coincided with the approximate time that Hibbett was hired as a "pulmonary function technologist." When Ruppel, the department director, told plaintiff in 1984 that her title had been changed, she refused to sign a form showing this change in title to blood gas technician, because she considered it a demotion. Defendants' evidence shows that this refusal was simply noted in the record, but the change in title was effective at that time. Plaintiff testified that defendants concealed the change in title from her, and points to various forms for sick leave (many of which she filled out herself) that show her title as "Pulmonary lab tech." According to plaintiff, she only learned that her title had in fact changed on December 14, 1990, when defendant Hibbett, who by then was the department assistant director, informed her of the change during an evaluation.
Plaintiff's title was changed to "pulmonary function assistant" on April 25, 1991, but plaintiff again refused to sign a change in status form because she felt that "function technician"[2] was her appropriate title and that she was not an "assistant." On November 2, 1993, plaintiff filed a charge with the EEOC alleging that she had been denied raises and bonuses because of her age and national origin, and raising both the 1984 and 1991 changes in title as examples of this discrimination.[3]
Early in 1994, SLUH began a process to reduce its forces. The RIF implementation policy provided for the selection of employees to be laid off on the basis of job classification, employment status, prior job performance, seniority, and licensure and/or certification. David C. Miller, Director of Affirmative Action, testified by affidavit that plaintiff was selected for termination solely on the basis of *1265 the first factor (job classification). Sanford Deitch, Assistant Administrator  Hospital Services Administration, who was Ruppel's supervisor, testified by affidavit that after the Clinical Chemistry Laboratory agreed to do blood gas testing, he decided to transfer all blood gas testing from the Pulmonary Function Department to that department, and that he "recommended to the Hospital administration that the blood gas technician and pulmonary function assistant positions be eliminated." He further testified that the "final decisions concerning personnel and positions to be eliminated" were made by "upper level Hospital and University administrators." Miller's affidavit also states that a major portion of plaintiff's responsibilities  blood gas testing  was transferred to the clinical chemistry department, and that the blood gas technicians previously employed in the pulmonary function department were therefore laid off during the 1994 RIF. This resulted in four people being laid off and only four employees remaining in the pulmonary function department. Plaintiff, age 60 at the time of the RIF, was the oldest person in the department. The remaining employees were department director Ruppel, assistant director Hibbett, pulmonary function technologist Sue Borosh, and department secretary Kate Spellman Hahn. Sue Borosh is a white female who was approximately forty years old at the time of the RIF.
On April 29, 1994, SLUH's chief executive officer Herbert Schneiderman sent a memo to affected employees titled "Reduction in Force: Notice of Layoff", which informed the recipients that:
Effective June 30, 1994, your position will be eliminated and your employment with Saint Louis University Hospital will end. Along with the elimination of your position and your employment with Saint Louis University Hospital, a total of 91 other positions will be eliminated.[4]
Plaintiff, who was on vacation at the time the April 29 memo was sent to her, learned of her termination by telephone at some later date and, on May 5, 1994, received the memo in a meeting attended by her, her lawyer, and Affirmative Action Director Miller.
The position of "pulmonary function technologist" was retained, while "blood gas technicians" and "pulmonary function assistants" were eliminated. Miller testified that the position of pulmonary function technologist was retained "because a person holding that position could perform more advanced pulmonary testing, and more comprehensively interpret results, than a person in a lower classification." Plaintiff never held the title "pulmonary function technologist" and never performed all the duties of that position. She provided evidence that she can and has performed thirteen of the fourteen "basic duties" and two of the six "special duties" of a pulmonary function technologist. The pulmonary function technologist who was retained, Susan Borosh, had passed a national certification exam, which plaintiff never took. Among the duties that plaintiff did not do but Borosh did were drawing blood gasses, conducting exercise training, running quality assurance for pulmonary function studies, troubleshooting for specialized equipment, and drawing blood from an arterial line catheter.
Plaintiff testified that she was unable to perform those additional duties because of her lack of specialized training. She argues that she was not provided the training or the opportunity to advance because of discrimination, but conceded in her deposition that Ruppel told her, in 1991, that she could take the certifying test, that it would increase her pay, and that it was not required by SLUH. Plaintiff complains that Ruppel did not actively encourage her to obtain the certification.
Plaintiff also testified that she was excluded from office parties, given the "silent treatment" by Ruppel after she filed her 1993 EEOC complaint which accused him of discrimination, was not informed of changed test procedures, was not given the proper amount of overtime, was not helped to catch up on tests, was monitored more closely than other employees by her supervisors, and was subjected to derogatory remarks by co-workers due to her age, national origin, and race. Plaintiff testified that Ruppel was "sociable *1266 with all the caucasians[,] especially the younger, pretty ones." The specific derogatory comments and comments showing bias to which she testified are: (1) When she came to work with her hair down, at some time in the 1990s, Hibbett said, "your hair gives me goose bumps." (2) When she and Hibbett were discussing their children, he stated "You are as old as my mother, or older," to which plaintiff replied, "You just guess how old I am." (3) Hibbett, Ruppel, and Borosh made comments about the ability of some foreign doctors at SLUH to speak English and made other derogatory comments about foreign doctors. Plaintiff responded to these comments by telling the others "Don't belittle these foreigners, ... my husband is a foreign doctor ... [and] is the physician in charge of V.A. and almost all of the doctors under him are caucasian." She also told them that foreign doctors "pay taxes, too, like you, or more than we do." (4) Someone (either Ruppel or Hibbett) once asked plaintiff whether she had a refrigerator in her home in the Philippines, to which she responded by saying "[w]hat you see here, we have there." (5) Hibbett also made a reference to his mother's age, and in front of a patient once called plaintiff "Old Fannie." (6) Plaintiff once overheard Hibbett ask Ruppel, "Is Bozo finished with the test?," which she understood to be a reference to her age. (7) During a conversation with Borosh, Hibbett and Ruppel, "they said, `I don't know if I had a mother I would let her work more than 50 years old.' And who is hearing that? I am the one who is above 50 there," and (8) Hibbett, Ruppel, and many of plaintiff's patients asked her about her retirement plans "many times." She told all of them that she would work as long as she was able. During their depositions, Ruppel admitted that he "probably" told "Polack jokes" and that he "told jokes that talked about Jews," and Hibbett admitted that he at times told "ethnic" jokes. There is no evidence that Ruppel or Hibbett ever made any jokes about Filipinos.
Plaintiff was named SLUH's employee of the month in 1989 and employee of the year in 1990.
Plaintiff filed a charge of discrimination challenging her termination with the EEOC and the Missouri Commission on Human Rights ("MCHR") on June 17, 1994, and filed the instant complaint on January 20, 1995.

II. Discussion

In determining whether summary judgment should issue pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the facts, and the inferences from these facts, are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish the absence of a genuine issue of material fact and to show that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). If the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant is unable to make a showing sufficient to establish the existence of an element essential to its case. Lujan v. National Wildlife Federation, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186-87, 111 L.Ed.2d 695 (1990).

A. The Discrimination Claims

As a preliminary matter the Court notes that supervisors Ruppel and Hibbett are not individually liable under Title VII, the ADEA or the MHRA, as they are not the employer to whom those statutes are directed. See Lenhardt v. Basic Institute of Technology, Inc., 55 F.3d 377, 380-81 (8th Cir. 1995); Griswold v. New Madrid County Group Practice, Inc., 920 F.Supp. 1046 (E.D.Mo. April 3, 1996). Moreover, there is no evidence that they made the termination decision challenged here. They are therefore entitled to summary judgment on Counts I, III, V, and VI, and on the Title VII portions of Counts II and IV on this basis alone.
*1267 The Court will analyze the remaining discrimination claims under the burden shifting analysis of McDonnell Douglas/Burdine, because there is no direct evidence of discriminatory intent. See Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1166 (8th Cir.1985). In an employment discrimination case under Title VII, the ADEA, section 1981, or the MHRA, summary judgment is appropriate unless plaintiff has competent evidence supporting each of the elements of her prima facie case. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776 (8th Cir.1995). To establish a prima facie case, plaintiff must meet the standards articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff who was dismissed pursuant to a RIF must prove that (1) she was at least 40 years of age at the time of her termination, (2) she satisfied the applicable job qualifications, (3) she was discharged, and (4) she must also "provide some additional showing that [discrimination] was a factor in the termination." Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir.1995). The fourth element can be established by direct evidence, statistical evidence, or circumstantial evidence. Holley, 771 F.2d at 1166. If the prima facie case has been established the employer has the burden of producing evidence that it discharged the plaintiff "for a legitimate, nondiscriminatory reason," and the burden then shifts to the plaintiff to prove that the reason provided by the employer was a pretext for discrimination. Nitschke, 68 F.3d at 251.

1. The 1994 Termination

Although defendants do not challenge plaintiff's ability to meet the first three requirements of the McDonnell Douglas test, they contend that plaintiff has failed to provide any additional showing that age, race, or national origin were factors in the termination. The Court agrees.
The undisputed evidence shows that plaintiff was terminated as part of a RIF during which more than sixty employees were terminated, and that the only remaining employee in plaintiff's department who performed duties at all similar to hers had a different and higher job title and was more qualified than plaintiff. Plaintiff agreed that she had never performed the full functions of a "pulmonary function technologist" and that she was not qualified for that job. Thus, even if plaintiff had made her prima facie case, defendants have shown that the decision was made for legitimate, non-discriminatory reasons.
Plaintiff's evidence that age, race, or national origin were involved in the decision consists of the poor treatment she believes she received from Ruppel, Hibbett, and the other department employees, such as not being invited to birthday parties, and the derogatory comments listed above. The comments about foreign doctors and the ethnic jokes show bigotry, but the evidence does not show that this bigotry was directed at plaintiff or her national origin group. Although there were comments made about plaintiff's age, nothing about those comments is connected to the employment decision made here. While the comments are clearly inappropriate, nothing in the evidence suggests that they had anything to do with the decision to select plaintiff or her position for the RIF, and they therefore do not give rise to a genuine issue of material fact regarding whether plaintiff's age or national origin was a factor in her termination. See Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir.1993) (distinguishing comments which "demonstrate a discriminatory animus in the decision process" from "stray remarks"); see also Bright v. Standard Register Co., Inc., 66 F.3d 171, 173 (8th Cir.1995). Plaintiff has failed to provide evidence showing that age, racial, ancestry, or national origin discrimination was a factor in her termination, and she has therefore failed to show the fourth element of the McDonnell Douglas prima facie case. See Nitschke, 68 F.3d at 251.
Plaintiff argues that "it is ... clear that from a cost savings point of view, [that plaintiff] could perform most of the duties a pulmonary function technologist [performs] at less pay than a technologist" and that SLUH and Ruppel "created a new job classification of pulmonary function technologist to do pulmonary function tests, though the step *1268 was not required by law." Plaintiff further argues that SLUH should not have terminated the blood gas technicians and pulmonary function assistants in the department, but instead should have terminated the secretary or Hibbett. Plaintiff's contentions notwithstanding, "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Hutson, 63 F.3d at 781; see also Krenik v. County of Le Sueur, 47 F.3d 953, 960 (8th Cir.1995).
Plaintiff also contends that she was terminated in retaliation for filing her November 2, 1993, EEOC complaint against SLUH and Ruppel. To prove unlawful retaliation discrimination a plaintiff must show (1) statutorily protected participation in Title VII or ADEA processes, (2) adverse employment action, and (3) a causal connection between the two. West v. Marion Merrell Dow, Inc., 54 F.3d 493, 496-97 (8th Cir.1995). Although the first two elements of the test are undisputedly met, the third is undisputedly absent. Plaintiff has failed to provide any evidence of a causal connection between her earlier discrimination claim and her subsequent discharge. Plaintiff contends that Ruppel gave her the "silent treatment" after she accused him of discrimination in her previous complaint, but this in itself does not suffice to establish the necessary third element of the test. Cf. Womack v. Munson, 619 F.2d 1292 (8th Cir.1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).
Because plaintiff has failed to produce any evidence that age, race, national origin or retaliation were factors in the decision to select her position for elimination during the reduction in force, defendants are entitled to summary judgment on Counts III, IV, and VI.

2. The 1984 "Demotion"

Defendants contend that all claims relating to the 1984 change in job title are barred as untimely filed. Under Title VII and the ADEA, a charge of discrimination must be filed with the EEOC or the MCHR within 180 days after the occurrence of the last allegedly discriminatory act; this is extended to 300 days because Missouri law also prohibits such discrimination. See Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1327-28 (8th Cir.1995); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). The MHRA furthermore requires that any suit must be filed within two years of the cause's occurrence. Mo.Ann.Stat. § 213.111(1) (Vernon Supp. 1995). Plaintiff here contends that she discovered her reclassification in 1990, but she did not file her initial discrimination charge until 1993, more than 300 days after her discovery of the "demotion."[5]
Plaintiff argues that her alleged demotion in 1984 from pulmonary lab technician to blood gas technician constituted a continuing violation and that therefore her claim was timely filed. In Heymann v. Tetra Plastics Corp., 640 F.2d 115, 123 (8th Cir. 1981), the Eighth Circuit held that a change in job assignment does not constitute a continuing violation because this would ignore the "policy underlying the 180 day limitation period [for filing a complaint with the EEOC], that policy being to `protect employers from the burden of defending claims arising from employment decisions that are long past.'" Heymann, 640 F.2d at 120, quoting Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Were the Court to accept plaintiff's argument, the practical effect would be to prevent the statutes of limitation from ever running. See Bergman v. United States, 751 F.2d 314, 316-17 (8th Cir.1984), cert. denied, 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). A reclassification does not constitute a continuing violation even if some of the *1269 effects of the reclassification do not occur until later, because a continuing violation is occasioned by continued unlawful acts and not by the continued ill effects from an alleged violation. Id.; see also Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 167 (8th Cir.1995). The undisputed evidence shows that plaintiff's charges of discriminatory demotion under Title VII, the ADEA, and the MHRA are time-barred.
Count II alleges that plaintiff was demoted because of her race and national origin in violation of 42 U.S.C. § 1981. Because Count II is based on the 1984 "demotion," it is governed by the law of § 1981 before it was amended by the Civil Rights Act of 1991. As such, her "demotion" claim is barred by Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In any event, plaintiff wholly failed to present any evidence that could be construed to show that the change in job title in 1984 had anything to do with plaintiff's race or national origin.

B. State Tort Claims

Plaintiff seeks to impose liability for intentional infliction of emotional distress and tortious interference with her employment relationship. She brings these claims against Ruppel for the 1984 demotion and against both Ruppel and Hibbett for the 1994 termination. She also seeks to impose liability on both Ruppel and Hibbett for civil conspiracy related to the 1994 termination. Defendants have shown that both factually and legally these claims must fail, and they therefore are entitled to judgment as a matter of law.
A successful claim of intentional infliction of emotional distress must show (1) extreme and outrageous conduct by one who (2) intentionally and recklessly causes (3) severe emotional distress to another. See Pretsky v. Southwestern Bell Tel. Co., 396 S.W.2d 566, 568 (Mo.1965). When bringing an allegation of intentional infliction of emotional distress the plaintiff must show conduct on the part of defendant that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Rooney v. Nat'l Super Markets, Inc., 668 S.W.2d 649, 651 (Mo.Ct.App.1984) (quotation omitted); Pretsky, 396 S.W.2d at 568-69. No genuine issue on this claim remains, and plaintiff has failed to present any evidence of "extreme and outrageous" conduct. Therefore summary judgment as to counts VII and VIII is appropriate.
Turning to counts IX and X, to establish a claim for tortious interference with a contract or business expectancy under Missouri law, plaintiff must plead and prove: (1) a contract or a valid business expectancy, (2) defendant's knowledge of the contract or valid business expectancy, (3) intentional interference by the defendant inducing or causing a breach of the relationship, (4) the absence of justification, and (5) damages resulting from defendant's conduct. SSM Health Care, Inc. v. Deen, 890 S.W.2d 343, 346 (Mo.Ct.App.1994). "Without a contract specifying the term of employment, the employment is deemed at will and hence there is no valid expectation of employment for any duration." Fields v. R.S.C.D.B., Inc., 865 S.W.2d 877, 879 (Mo.Ct.App.1993); see also Sisters of St. Mary v. Blair, 766 S.W.2d 773, 775 (Mo.Ct.App.1989). Plaintiff here has failed to state a claim for tortious interference with an employment relationship because she has not presented evidence showing that she was anything other than an at-will employee. Additionally, because the undisputed evidence shows that Ruppel and Hibbett were acting as employees and agents of SLUH, they were not third parties to the contract and therefore cannot be held liable for tortious interference with an employment relationship. Fields, 865 S.W.2d at 879; White v. Land Clearance for Redevelopment Auth., 841 S.W.2d 691, 695 (Mo.Ct.App.1992).
Plaintiff's last ground for relief is a conspiracy claim contained in count XI. A successful claim of civil conspiracy must establish that two or more persons reached an agreement to do an unlawful act or to use unlawful means to do an act that would otherwise be lawful. See State Farm Mut. Auto. Ins. Co. v. Weber, 767 S.W.2d 336, 338 (Mo.Ct.App.1989). The discussion above shows that there are no genuine issues of *1270 material fact on this claim, and plaintiff has not alleged or shown anything that could be construed as an unlawful act or a civil conspiracy actionable under Missouri law.

C. Motion to File Second Amended Complaint

The Court now turns first to plaintiff's motion for leave to file a second amended complaint. Under Rule 15, leave to amend should be granted absent a good reason for the denial, such as undue delay, bad faith, undue prejudice to the nonmoving party, or futility. Fuller v. Secretary of Defense of U.S., 30 F.3d 86, 88 (8th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 583, 130 L.Ed.2d 497 (1994); see also Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir.1989).
This Court's April 6, 1995, Case Management Order set August 1, 1995, as the final date on which to amend the pleadings, yet plaintiff did not seek to file her second amended complaint until March 1, 1996, seven months after the amendment deadline had passed and a month after the summary judgment motion was filed. Plaintiff asserts that the amended complaint "contains no new theories of recovery against [d]efendants," that defendants will suffer "no prejudice whatsoever," and that "[n]o additional discovery or motions should result from the filing of the [amended complaint]." Contrary to plaintiff's assertions, however, the amended complaint confuses the issues by collapsing some of the counts contained in the original complaint, thereby alleging additional charges against defendant Hibbett and a new conspiracy charge against SLUH. It furthermore charges that SLUH, Hibbett, and Ruppel conspired to "commit intentional infliction of emotional distress" and to "commit tortious interference with employment relationship." The Court therefore cannot agree with plaintiff's assertions that the second amended complaint does not contain any new legal theories and that it will not prejudice defendants. More importantly, nothing in the proposed second amended complaint cures the defects in plaintiff's claims, and the second amended complaint would be subject to summary judgment for the same reasons the motion is being granted here. Therefore, amendment would be futile. The Court finds that justice does not require the Court to allow a plaintiff to alter her complaint in such a manner.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for summary judgment [# 40] is granted.
IT IS FURTHER ORDERED that plaintiff's motion for leave to file second amended complaint [# 46] is denied.
A separate judgment in accordance with this Memorandum and Order is entered this same date.
NOTES
[1] Unless noted otherwise, all facts set forth here are uncontested.
[2] Plaintiff's testimony refers to her appropriate job title as both "pulmonary laboratory technician" and "pulmonary function technician," while defendants refer to her position as going from "pulmonary laboratory technician" to "blood gas technician" to "pulmonary function assistant." Plaintiff agrees that she was never a "pulmonary function technologist."
[3] Plaintiff's complaint here only challenges the 1984 change in job title, and does not raise the 1991 change in title as a claim of discrimination.
[4] David Miller's affidavit indicates that "over 60 people" were ultimately terminated in the RIF.
[5] For purposes of this discussion, the Court will accept plaintiff's testimony that she did not learn of the change in title to blood gas technician until 1990, but the Court notes that this is merely an assumption for purposes of the argument, and not a conclusion based on the evidence, as material disputes remain on this point. The Court also seriously doubts that this change in title was in fact a "demotion" or other adverse employment action, but it is not necessary to decide that issue.