No. 95-2253

WALTER ROTHERMEL, JR.,                    *
                                          *   On Appeal from the United
          Plaintiff-Appellee              *   States District Court for
                                          *   the Western District of
     v.                                   *   Arkansas.
                                          *
GEORGIA-PACIFIC CORPORATION,              *   [UNPUBLISHED]
                                          *
          Defendant-Appellant.    *


Submitted:  January 10, 1996

Filed:  March 5, 1996


Before LOKEN, REAVLEY[*] and HANSEN, Circuit Judges.


PER CURIAM.

          Georgia Pacific appeals a jury verdict in favor of its former
employee, Rothermel, in an age discrimination suit. See Age
Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (ADEA).
Georgia Pacific discharged Rothermel in October of 1992 from his
position as administrative services manager at the company's Ashdown,
Arkansas paper mill.  Georgia Pacific argues it was entitled to a
judgment as a matter of law, or

_____

          [*]The HONORABLE THOMAS M. REAVLEY, United States Circuit
          Judge for the United States Court of Appeals, Fifth
          Circuit, sitting by designation.

1

alternatively a new trial based upon erroneous evidentiary rulings by the district court.[1]  We affirm.

## I.

Just out of college, Rothermel began his career in the paper and pulp industry in 1954 with the Mead Corporation.  For the next twelve years he progressed through the ranks of the company, finally becoming controller and corporate treasurer of one of Mead's divisions.  In 1966, Rothermel quit to help found a new company.

Bodcaw Corporation's subsidiary, Pineville Kraft, and two Finnish companies had joined resources to form a new paper mill in Pineville, Louisiana.  Rothermel and another individual were responsible for the oversight of the construction, staffing, and operations of the new mill. When the mill became operational, Rothermel was in charge of traffic and production scheduling.  While not responsible for the shipping department because of the mill's union structure, Rothermel worked directly with the shipping department as well.[2]  Rothermel was executive vice president of Bodcaw, and a vice president of Pineville Kraft.  In 1979, International Paper purchased Pineville Kraft.  Rothermel chose to leave the company rather than move to International Papers' headquarters in New York.

After Pineville Kraft, Rothermel went to work at the Ashdown paper mill which was owned at that time by Great Northern Nekoosa.  He performed several functions, including temporary

---

[1]The Honorable Harry F. Barnes, United States District Judge of the Western District of Arkansas.

[2]The shipping department oversees the movement of goods within the building and the loading of trucks.  The traffic department manages the movement of goods via train cars, trucks and trailers to their ultimate destination.

mill manager, at the Ashdown Plant while it underwent corporate changes. In 1982 he became the woodlands manager where he remained until Georgia Pacific purchased the plant in 1990 and eliminated that position. As a result, Georgia Pacific initially chose to terminate Rothermel. When it was discovered that Rothermel had been terminated, a former co-worker at Ashdown, Alan Dykes, who was then an executive with Georgia Pacific, successfully convinced his company to employ Rothermel in some other capacity. Dykes' recommendation was based upon their past working relationship. Rothermel was temporarily placed in charge of training new employees, and when the senior management position opened, he was hired permanently as the administrative services manager in charge of the traffic, purchasing and information resources departments. His annual salary was $96,800, and his performance reviews at Georgia Pacific indicate he had performed very well.

In 1992, Georgia Pacific began a corporate restructuring and reduction-in-force at the Ashdown mill. Georgia Pacific reorganized the structure of senior management, so that several departments reported to different senior managers. The administrative services manager was eliminated, and a distribution services manager was created. This new position managed the traffic, shipping, and production control divisions. Eventually, Rothermel's position was filled by 40 year old Lynn Jones whose annual salary was $56,000.

Rothermel sued Georgia Pacific for age discrimination and won a jury verdict. Georgia Pacific argues that the district court erred in refusing to grant its motion for judgment as a matter of law due to the insufficiency of the evidence to support the jury's verdict, and that the district court erred in admitting certain evidence.

## II.

To make a prima facie case of age discrimination, Rothermel must show that he was within the protected age group, that he was performing his job at a level that met his employer's legitimate expectations, that he was discharged, and that his employer attempted to replace him. Id. In reduction-in-force cases the last factor is absent, so a plaintiff must "provide some additional showing" that age was a factor in his termination. Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir. 1995). The evidence does not indicate that there was a reduction-in-force among senior management. The company reorganized reporting duties among its top management; however, no positions were eliminated.

Once the plaintiff's burden is met, the burden of production then shifts to the employer to show that he discharged the employee for a legitimate, nondiscriminatory reason. Id. Georgia Pacific is required to set forth "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993). However, the employee has the ultimate burden of persuasion to prove that the reason provided by the employer was a pretext for discrimination. Rothermel can make his prima facie case if the jury believes that the company, in an effort to get rid of him because of his age, eliminated his position, created a new one, and refused to interview him for that position. Gallo v. Prudential Residential Services, 22 F.3d 1219, 1222-25 (2d Cir. 1994).

In reviewing the district court's denial of a motion for judgment, we consider the evidence in the light most favorable to Rothermel; assume that all conflicts in the evidence were resolved in Rothermel's favor; assume as proved all facts that

Rothermel's evidence tended to prove; and give Rothermel the benefit of all favorable inferences that may reasonably be drawn from the facts proved. Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 800 (8th Cir. 1994). We focus "on the ultimate factual issue of whether the employer intentionally discriminated against the employee on account of age." Id.

At the request of Brear, the mill manager, Rothermel prepared restructuring recommendations for his division. Rothermel recommended combining the duties of traffic, shipping and production control. Alan Dykes, who was the former mill manager at Ashdown until he went to work for Georgia Pacific in Atlanta, testified that Rothermel was probably qualified for the job. Rothermel had extensive experience in all three areas from his prior work at Ashdown and Pineville Kraft. Rothermel's performance rating, determined three months before being terminated, was commendable. He was replaced by Jones who was 40 years of age.

The Georgia Pacific reorganization eliminated two of its seven senior managers (Rothermel age 60 and Russell age 63). The responsibilities of other managers changed as well, but only the two over 60 were fired. The remaining managers ranged in age from 37 to 51. The company also fired 13 other salaried employees in its reduction-in-force. Of the 15 people terminated, 14 were older than 40. The average age of the person eliminated at the company was 49.7. Of the six new employees hired by the company, 5 were younger than 40. The other new employee was Rothermel's replacement, Lynn Jones, who was 40 years, 8 months, old. Therefore, all new employees were younger than 41. The average age of the new employees was 31 and a half.

Russell, the other manager discharged, testified that in October of 1992, in a response to mill management's request, he recommended the elimination of his own job. Concerned with the

prospects this recommendation had on his job, he sought the advice of Brear, the mill manager. Brear assured Russell that any eliminations of this kind would be made through attrition. Despite this assurance Russell was discharged in the fall. Upon his termination, Russell inquired of Brear about other possible positions. He was informed that Georgia Pacific was looking at making employee reductions and flattening their organizational structure, and that there were no current openings. The evidence indicates, however, that his duties were split between a current manager and another _newly_ created manager. The organizational chart indicated that the new position was open.

The evidence indicates that the corporate restructuring involved reassigning reporting responsibilities within the company. Rothermel was not considered for the position despite his experience in the area. Russell was informed no new openings existed. The statistics also support Rothermel's position that age factored into the job eliminations at the Ashdown plant.

Georgia Pacific maintained at trial that the elimination of Rothermel was due to a corporate restructuring at the mill, the decision to hire another employee at the mill, and Rothermel's lack of "hands-on" experience. The credibility of the Georgia Pacific managers was critical to the company's explanation of their legitimate, nondiscriminatory reasons for firing Rothermel. Because the Georgia Pacific employees' testimony was so riddled with inconsistencies, we do not believe the jury acted irrationally in rejecting the company's excuse.

Brear, the mill manager, testified that during the reorganization planning phase Rothermel recommended combining the three divisions. Brear testified further that he decided to hire Perry Odom based upon his experience with both men. This decision was reached after he, Wilt and Crawford discussed Rothermel's "pluses and minuses." Brear testified further that he personally offered Odom the job, and that after Rothermel had

left, Odom resigned from the company to take a position elsewhere.

Wilt, the human resources manager, also testified that he, Crawford and Brear discussed Rothermel's qualifications for the job. Wilt testified that the reason Rothermel was not given an opportunity to fill the new position was because the job had been offered to Odom. He further testified that Odom declined the job after Rothermel had left the company.

Crawford, Ashdown's production manager, also testified Odom was offered the position prior to Rothermel's departure from the company, and that Rothermel was no longer with Ashdown when Odom resigned. However, Crawford testified that he never discussed Rothermel's qualifications with Brear or Wilt, but had only discussed Odom.

Because all three managers of Ashdown testified that Odom was offered the job prior to Rothermel's departure from the company, the district court permitted Odom's telephonic deposition to be played to the jury in rebuttal. Odom testified that there was a meeting on October 5, the day he resigned, in which he was informed that he was being considered for the job. However, he was never offered the job. The evidence also indicated, contrary to the testimony of Ashdown's managers, that Odom resigned before Rothermel was fired on October 7. Therefore, despite their testimony, one of the reasons Rothermel was not interviewed or considered for the position was not because he had already left the mill or that Odom had already been hired for the job.

The allegation that Rothermel was not offered the job because he lacked "hands on" experience also was unconvincing. Wilt testified that the managers of production, shipping, and traffic who were to report to the newly created distribution

manager were not required to have "hands on" experience. Several individuals who were interviewed for the new job worked below Rothermel on the organizational chart (one even worked for him) and lacked any experience in the other divisions for which they would be required to manage. Wilt was completely unaware of Rothermel's background, and at one point he testified that he had not even seen Rothermel's resume, although it was in the corporate files.

Georgia Pacific's corporate director of logistics testified about the company's philosophy concerning traffic, shipping and production control. He testified that after the 1980's Georgia Pacific created distribution specialists who would oversee the delivery systems. This "re-engineering" occurred initially at the tissue mills in a program called "MRP II." The director recommended two Georgia Pacific employees who did not work at Ashdown because of the employees' background in MRP II. While he was not aware that Rothermel was not hired, he testified that Rothermel lacked this background. The director testified, however, that he was not aware that Odom had been offered the job. Odom also lacked experience in the Georgia Pacific MRP II program.

We agree with the district court that the motion for judgment as a matter of law should have been denied. A jury could have freely rejected Georgia Pacific's proffered reasons for the firing of Rothermel and inferred that the real reason for his discharge was his age. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Hicks, 113 S.Ct. at 2749. We believe this to apply here.

Georgia Pacific also contends the evidence was insufficient to support a finding of willful discrimination.  A finding of willfulness requires a determination that Georgia Pacific knew, or had reckless disregard for, whether its conduct violated the ADEA.  Hazen Paper Co. v. Biggins, 113 S.Ct. 1701, 1710 (1993); Wiehoff v. GTE Directories Corp., 61 F.3d 588, 594 (8th Cir. 1995); Nelson, 26 F.3d at 803.  The determination of "willful" requires a finding of more than an employer's mere knowledge that the ADEA was "in the picture."  Hazen, 113 S.Ct at 1708; Trans World Airlines, Inc. v. Thurston, 105 S.Ct. 613, 624-625 (1985).  Viewing the evidence in the light most favorable to Rothermel, the evidence supports the jury verdict.

When Russell approached Brear about potential positions after the reorganization, he was assured that if there were any managers who had to leave the company there would be a "two year retirement program."  Wilt, the human resource manager, knew about the ADEA.  Despite this, the company eliminated the two positions in senior management held by the two men over 60.  The reorganization plan listed the age of all salaried employees to be eliminated.  Neither Russell nor Rothermel was considered for the new positions.  Russell was even informed that no such positions existed.  The jury was also free to infer from Ashdown managements' testimony that they intended to "cover up" their actions by insisting they considered Rothermel for the position, discussed his qualifications together, but chose to hire Odom for the position instead.  The evidence was sufficient to support the jury's conclusion.  See Nelson, 26 F.3d at 803 (liquidated damages were authorized in case where after management discussed offer of early retirement to senior manager and reassured him of his job, the company fired him; and the head of human resources knew about the ADEA).

The district court did not err in refusing to grant Georgia Pacific's motion for a judgment as a matter of law.

III.

Georgia Pacific complains that Rothermel's expert should not have been admitted at trial. The admission of expert testimony lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Westcott v. Crinklaw, 68 F.3d 1073, 1075 (8th Cir. 1995).

In a motion in limine, Georgia Pacific objected to the testimony of Rothermel's expert Metzger. In a hearing prior to trial, the court heard arguments of the parties concerning the tables produced by the expert. Before Metzger testified, Georgia Pacific objected on several grounds to four tables which were being introduced as a single exhibit by Rothermel. On appeal, Georgia Pacific has objected to the entirety of Metzger's testimony because it was unreliable and prejudicial. A motion in limine does not preserve error for appellate review. Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 1333 (8th Cir. 1985). An objection on one ground does not allow a party to argue on appeal that the evidence should be excluded on different grounds. Id. at 1333-34. Georgia Pacific refers to the general duty of a district court to ensure an expert witness's testimony is relevant, reliable, and more probative than prejudicial. Insomuch as Georgia Pacific is arguing that the district court should exercise its gate keeping authority over expert testimony without proper and specific objections, we have rejected this argument. McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1407 (8th Cir. 1994).

Georgia Pacific next argues that the trial court erred in admitting the testimony of Odom. As a rebuttal witness, Rothermel played the tape of a telephone deposition of Odom. The deposition was obtained on Rothermel's motion during trial. Georgia Pacific argues that the court erred in admitting the

evidence, or alternatively, that the court erred in ordering the deposition in the first place.

Georgia Pacific cites Murphy v. Tivoli Enters., 953 F.2d 354, 359 (8th Cir. 1992), for the proposition that the court erred in admitting the telephone deposition of Odom. Its reliance on Murphy is misplaced. First, Murphy dealt with the admission of telephone testimony. That is, the expert testified by telephone. Id. at 358. We held this to be error because, the witness was not present as required by Rule 43(a) of the Federal Rules of Evidence. However, Murphy explicitly recognized the anomaly in the federal rules which permits the admission of a deposition as evidence, even though not "live" before the jury. 953 F.2d at 359; Fed.R.Evid. 32(a). Rule 32(a) provides that, "[a]t the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying . . ." may be admitted provided other conditions in the rule are met.

Our holding in Murphy was also prior to the amendment of Rule 32, which now provides:

> Except as otherwise directed by the court, a party offering deposition testimony pursuant to this rule may offer it in stenographic or nonstenographic form, but, if in nonstenographic form, the party shall also provide the court with a transcript of the portions so offered. On request of any party in a case tried before a jury, deposition testimony offered other than for impeachment purposes shall be presented in nonstenographic form, if available, unless the court for good cause orders otherwise.

(Emphasis added). The amendment to Rule 32(c) became effective on December 1, 1993. Trial began in this cause in January of 1995. Admission of the telephonic deposition of Odom was not error.

The second question is whether the trial court abused its discretion in ordering the deposition in the first place. Georgia Pacific's complaint appears to be based upon unfair surprise because Odom was not listed in the pre-trial witness list. We review a district court's decision to permit a party to call a surprise witness for an abuse of discretion. The factors to be considered by the court are:

> (1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified;
> (2) the ability of that party to cure the prejudice;
> (3) the extent to which waiver to the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court;
> (4) bad faith or willfulness in failing to comply with the court's order.

Morfeld v. Kehm, 803 F.2d 1452, 1455 (8th Cir. 1986). The exclusion of critical testimony by unlisted witnesses is disfavored. Id. The evidence was admitted for the limited purpose of rebutting Georgia Pacific's management claims that Odom was offered the job. If Georgia Pacific management had not insisted that Odom had been hired for the job, or that Odom had resigned after Rothermel had been fired, Odom's testimony would have been unnecessary. The district court did not abuse its discretion in ordering the telephonic deposition of Odom. See Dunlap-McFuller v. Riese Org., 980 F.2d 153, 158-59 (2d Cir. 1992), cert. denied, 114 S.Ct. 290 (1993).

Affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.