**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand is **GRANTED.** [Doc. 10]

Carl G. **WALTON**, Plaintiff,

v.

**McDONNELL DOUGLAS CORPORATION,** Defendant.

No. 4:96CV1437–DJS.

United States District Court.
E.D. Missouri,
Eastern Division.

Nov. 3, 1997.

John D. Lynn, Kathryn E. Denner, Denner and Lynn, St. Louis, MO, for plaintiff.

Timothy J. Sarsfield, Thompson Coburn, Thomas A. Mickes, Lucy A. Singer, Peper and Martin, St. Louis, MO, for defendant.

### ORDER

STOHR, District Judge.

Plaintiff, who was 54 years of age when terminated from his employment with defendant, brings his first amended complaint against his employer[1] alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, (Count I) and the Missouri Human Rights Act ("MHRA"), R.S.Mo. § 213.010, *et seq.*, (Count II). Defendant's motion for summary judgment is pending before the Court.[2]

#### A. Undisputed Facts

Plaintiff began working for defendant McDonnell Douglas Corporation in 1962. Over the next thirty years, plaintiff held various positions with defendant. Beginning in 1987, plaintiff was employed as "Foreman–Inspection" (hereinafter "Inspection Foreman"). In 1995, plaintiff was employed as Inspection Foreman on the second shift in Department 815R in defendant's Quality Assurance Division. As his title suggests, plaintiff was responsible for supervising inspectors in the Quality Assurance Division. The Quality Assurance Division oversees the inspection, maintenance and upkeep for various aspects of several of defendant's programs including the AV–8, T–45, F–18, XP and the Paint Shop.

Within the Quality Assurance Division were separate specialized areas including Machine Parts, Assembly, Electrical, Composite, Ramp and Flight, and Shipping and Receiving. Because the job duties and skill requirements of inspection foremen for the various areas differed, an inspection foreman typically only supervised inspectors in one area. Normally, inspection foremen would rotate only to cover a shortage or absence.

Plaintiff's primary job duties in Department 815R were for the Flight Ramp area. The Flight Ramp area involves aircraft which are nearly or fully assembled. Plaintiff was responsible for supervision of fifteen inspectors on the F–15 Program, the XP and the Paint Shop. Plaintiff supervised these inspectors only on the work they did in the Flight Ramp area.

From 1993 to the time of his layoff, plaintiff reported to his immediate supervisor—Don Rogers, Superintendent of Inspection. Rogers is seven years older than plaintiff. Rogers supervised inspection foremen who worked in the Flight Ramp area for the various programs in Quality Assurance. Rogers reported to Thomas Middleton, Manager–Quality Assurance.

Since 1990, decreased defense spending by the United States government and increased competition has forced defendant to consolidate various programs and reduce overhead costs in order for defendant to remain competitive. As a result, defendant has implemented several reductions in force ("RIF's").

As a result of various layoffs, in March of 1993 the EEOC filed an action against defendant alleging a violation of the ADEA. As part of the resolution of that lawsuit, defen-

---

1. Defendant recently rehired plaintiff.

2. Plaintiff dismissed his claim that defendant discriminatorily failed to transfer him to another position after he was selected for layoff. *See* Stipulation for Dismissal filed September 17,

dant and the EEOC entered into a Consent Decree. *See EEOC v. McDonnell Douglas,* 93CV526–CEJ, 1993 WL 468903 (Consent Decree filed March 1, 1993 and approved August 12, 1993). Among other things, the Consent Decree required defendant to analyze the impact of layoffs "on employees 55 years of age or older compared to those under age 55." *See* Consent Decree, p. 18. The Consent Decree was in effect at the time plaintiff was selected for termination.

As a result of a Consent Decree, defendant implemented and now follows certain layoff procedures. Regardless of whether a layoff is planned, all comparable employees are graded on certain critical skills. The critical skills are determined by management based upon the underlying position and corresponding responsibilities. Each critical skill is assigned a maximum point value, with the maximum total being 75 points. The employees are then ranked on the basis of point totals, and, in the event of a layoff, defendant is able to determine and select the least-skilled employee based upon this process.

Plaintiff's skill group included a total of eight employees, all of whom were inspector foremen in Department 815R—foremen who worked on the Flight Ramp. Plaintiff was evaluated by Rogers, who gave plaintiff a score of 51.8 With that score, plaintiff ranked fifth of eight employees. Only Gerald Fulton and Robert Baker ranked below plaintiff. Baker, whose score was the lowest at 47.5, was working on the AV–8 program in Quality Assurance at the time of his transfer. Plaintiff was not assigned to work on the AV–8 program in quality assurance. Baker was transferred in lieu of layoff to an available position in Italy working on the AV–8 program. Fulton, the second lowest ranked individual, had a ranking of 51.6. Defendant deems equal those employees whose scores are within 2.5 points of each other. Thus, because only .2 points separated Fulton and plaintiff, management had to make a further evaluation of Fulton and plaintiff to determine whom to layoff. Fulton, who is three years older than plaintiff, was retained. Plaintiff was selected for layoff.

On April 10, 1995, Rogers informed plaintiff that he was being terminated as part of a reduction in force. Plaintiff's layoff was to become effective April 21, 1995. Although plaintiff was permitted to try to find another position within McDonnell Douglas before his layoff became effective, plaintiff never pursued any other position during the eleven days prior to the effective date of his termination. Nevertheless, defendant offered plaintiff a temporary position [3] at its facility in Cherry Point, North Carolina. Charles Morris, Superintendent Quality Assurance, was aware of plaintiff's selection for layoff and felt that plaintiff could adequately perform the duties for the opening in Cherry Point. Morris, who had partial responsibility for filling the opening in Cherry Point, contacted plaintiff's supervisors and requested permission to offer the position to plaintiff. Morris offered plaintiff the position, which would have meant a relocation and a cut in pay. Plaintiff rejected the offer and his layoff became effective on April 21, 1995.

On or about June 19, 1995, plaintiff filed a charge of discrimination alleging that his employment had been terminated based upon his age. Subsequently, plaintiff filed his complaint. At or about the same time that plaintiff filed his complaint, defendant hired plaintiff as a contract employee. Plaintiff's hire was in connection with a strike at McDonnell Douglas in 1996. Plaintiff assumed a bargaining-unit position until the strike ended in September of 1996. On or about September 9, 1997, defendant rehired plaintiff as a Quality Engineer. Defendant remains employed in that position where his earnings are greater than his earnings prior to his layoff.

*B. Standard for Summary Judgment*

This Court must grant summary judgment if, based upon the pleadings, admissions, depositions, and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party must initially demonstrate the absence of an issue for trial. *Id.* at 323, 106 S.Ct. at 2553. Any doubt as to the existence of a

---

**3.** A dispute of fact exists as to whether the position was guaranteed for six months or one year.

material fact must be resolved in favor of the party opposing the motion. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Nevertheless, once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. Fed. R.Civ. P. 56(e). Summary judgment must be granted to the movant if the nonmoving party fails to produce any proof to establish an element essential to the party's case and upon which it bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. For "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### C. Analysis

Although plaintiff argues that he has come forward with direct evidence of discrimination,[4] as a matter of law, the Court concludes that plaintiff has failed to adduce any direct evidence of age discrimination, thus this case is governed by the familiar burden shifting analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) as refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). As the Eighth Circuit has repeatedly held:

> To establish a prima facie case, an age-discrimination plaintiff who was dismissed pursuant to a RIF must show that: (1) he was at least 40 years of age at the time of his termination; (2) he satisfied the applicable job qualifications; and (3) he was discharged. The plaintiff must also "provide some 'additional showing' that age was a factor in his termination."

*Nitschke v. McDonnell Douglas Corp.*, 68 F.3d 249, 251 (8th Cir.1995), *quoting Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir.1995). The same analysis applies to plaintiff's claims under the ADEA and the MHRA. *Hennessey v. Good Earth Tools, Inc.*, 126 F.3d 1107, 1108 n. 2 (8th Cir.1997) *citing Midstate Oil Co. v. Missouri Comm'n on Human Rights*, 679 S.W.2d 842, 845–46 (Mo. banc 1984); *Cook v. Atoma Int'l of Am., Inc.*, 930 S.W.2d 43, 45–46 (Mo.Ct. App.1996).

The Court finds that plaintiff satisfies the first three elements of such a showing. Defendant contends that plaintiff fails to offer any evidence which might satisfy the fourth element by raising an inference that age was a motivating factor in plaintiff's selection for termination. Defendant has satisfied any subsequent burden of producing evidence that plaintiff's termination was for a legitimate, non-discriminatory reason—the RIF and plaintiff's evaluations when compared with other inspection foremen in Department 815R. Consequently, even if plaintiff satisfies the "additional showing" requirement of the prima facie case in this context, the ultimate burden is also his to prove that defendant's proffered non-discriminatory reasons are a pretext for discrimination. Both aspects of plaintiff's burden require an examination of the sufficiency of plaintiff's proof of age-based discrimination. The Eighth Circuit has held that summary judgment may be entered against a discrimination plaintiff whose "evidence is insufficient for a reasonable trier of fact to infer age discrimination even though the plaintiff may have created a factual dispute as to the issue of pretext." *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1335 (8th Cir.1996).

Plaintiff offers the following facts and evidence in an attempt to meet both his prima facie and ultimate burdens of proof. First, plaintiff presents evidence of two statements made by his supervisor, Don Rogers.[5] In

---

**4.** Plaintiff argues that he has come forward with direct evidence that his supervisor, Don Rogers, was biased in favor of younger employees. The Court disagrees. Plaintiff has not presented any "explicit, inculpatory evidence of discriminatory intent" which would render the burden-shifting analytical framework inapplicable. *See Shannon*

*v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996); *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir.1995).

**5.** For the purposes of the pending motion, the Court assumes that Rogers made the statements.

the spring of 1993, Bobby Western, a foreman in the Flight Ramp area, had an opportunity to transfer from the Flight Ramp to the assembly area. At that time, Western was 50 years of age. Western asked Rogers whether a RIF would be coming soon and whether Rogers thought he should accept the transfer. Rogers replied that there probably would be a RIF in the future and stated, "I have to take care of my kids." Aff. of Bobby Western, ¶ 3. Western transferred from the Flight Ramp area to the assembly area in April of 1993. Additionally, when Rogers first met with plaintiff in August of 1993 after becoming plaintiff's supervisor, Rogers told plaintiff that Rogers planned to "protect B.J. Wenger and Kevin Fuhr." Aff. of Plaintiff, ¶ 4. Wenger and Fuhr were two foremen in the Flight Ramp area. Both were younger than plaintiff.

■ The two statements made by Rogers, even viewed in the light most favorable to plaintiff, are not evidence of age-based animus. First, the statements were made in the spring of 1993 and in August of 1993, respectively. Rogers completed the employee evaluations in December of 1994 and the RIF occurred in April of 1995. Both statements were made over a year before Rogers completed the employee evaluations and almost two years before the RIF. The remoteness in time of both of the statements undermines their relevancy. Moreover, the statements make no direct or indirect reference to an employee's age. Rogers is seven years older than plaintiff (age 61 at the time of plaintiff's selection for termination) and older than every employee in plaintiff's skill group (the employees ranged in age from 29 to 59). Although persons of any age are capable of discriminating on the basis of age, several courts have considered the age of the person making a statement when determining whether the statement had discriminatory undertones. *See, e.g., Mills v. First Federal Sav. & Loan Ass'n,* 83 F.3d 833, 842 (7th Cir.1996) (finding it significant, although not dispositive, that the comment in question was made by an individual age 55). The fact that Rogers was older than each of the employees in plaintiff's skill group undermines plaintiff's conclusion that Rogers' statement that he had to "take care of [his] kids" referred only to those employees under age 40. The fact that Rogers stated he wanted to "protect his kids" is not evidence that he wanted to protect the individuals that worked directly under him on the basis of age. *See Buchholz v. Rockwell Intern. Corp.,* 120 F.3d 146, 149 (8th Cir.1997) (comment of hiring supervisor to the effect that the "young kids" whom he hired "sure were sharp" was not evidence of discriminatory animus suggesting that the decisionmaker had considered improper motives in hiring, but rather was an "innocuous comment on the abilities of the new hires"). Moreover, Rogers' statement that he wanted to protect Wenger and Fuhr is not evidence of age-based animus. Rogers' statement that he wanted to protect Wenger and Fuhr, without more, is simply an innocuous statement that he wanted to protect two of his best employees. In 1995, Wenger and Fuhr each had performance evaluations ranking them as two of the top three employees in the department.

The Eighth Circuit has distinguished potentially relevant comments which demonstrate a discriminatory animus in the decision making process from stray remarks in the workplace which do not evince discriminatory animus relevant to a particular employee's claim. *Aucutt v. Six Flags,* 85 F.3d 1311, 1315–16 (8th Cir.1996) *citing Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991). The statement in question does not "directly reflect ... the alleged discriminatory attitude'" and is not "'sufficient to permit the factfinder to infer that the attitude was more likely than not a motivating factor in the employer's decision.'" *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 800 (8th Cir. 1994), *quoting Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993). Moreover, "some causal relationship is necessary to demonstrate the significance of non-contemporaneous statements ... to the resolution of the ultimate issue of intentional discrimination." *Hutson,* 63 F.3d at 779. Because no such causal relationship is shown in this case between Rogers' statements and plaintiff's selection for termination, the statements are not probative of age discrimination.

■ Next, plaintiff argues that his evaluation was performed to justify a subsequent

layoff on the basis of his age. In December of 1994, Rogers completed a "Quality Systems Integration Relative Assessment Scoring Worksheet" for plaintiff and each of the other inspection foremen who reported to him at that time. In support of his contention, plaintiff argues that Rogers was unable to substantiate the reasons for any of the skill ratings he assigned. Rogers had been told that the scores would be used in making selection of employees who would be subject to a future RIF. Rogers stated that he assigned scores based upon what he knew about the skills of the individual in question. Although Rogers had not received written instructions on completing the scoresheets, he had participated in meetings with superintendents, representatives from defendant's human resources department and upper management regarding how the evaluations were to be conducted. Rogers simply evaluated the individual's skill level which he had observed. Rogers' failure to provide specific instances to support plaintiff's scores is not evidence of age discrimination. *See Miller v. Citizens Sec. Group, Inc.*, 116 F.3d 343, 347 (8th Cir.1997). The rankings in question were based upon clearly articulated objective criteria. Plaintiff has come forward with no evidence to support his conclusion that Rogers' 1994 performance evaluation was completed simply to justify a future layoff of plaintiff on the basis of his age.

Additionally, plaintiff states that he asked Rogers during his mid-year performance review what he could do to improve his rating on the skills assessment and Rogers replied "nothing." Aff. of Plaintiff, ¶ 5. After Rogers completed his ratings, plaintiff participated in a special project which allowed plaintiff to demonstrate and develop additional skills. Rogers did not change plaintiff's ratings. The fact that Rogers would not change plaintiff's score based on subsequent events is simply not evidence of age-based animus.

Finally, plaintiff relied upon statistical information. Plaintiff was 54 years of age at the time defendant terminated his employment. Bob Baker, another inspection foreman in the Flight Ramp area was also select-ed for termination in April of 1995. Baker was also 54 years of age. Six flight ramp foremen were retained: B.J. Wenger, age 41; Kevin Fuhr, age 35; Jeff Hunt, age 29; Dick Skaggs, age 59; Gerry Fulton, age 57; and Frank O'Connor, age 56. Baker was able to secure a position in another work group and thus his employment was not terminated. In November of 1995, seven months after plaintiff's termination, Harold Finch, age 40, was promoted to a foreman position on the Flight Ramp. The raw data shows that defendant retained three employees (out of eight) who were older than plaintiff. This is simply not evidence of age discrimination.[6] This data which plaintiff has presented is not of a sufficient "kind and degree" to raise an inference that age was a motivating factor in plaintiff's selection for layoff. *Hanebrink v. Brown Shoe Co.*, 110 F.3d 644, 646 (8th Cir. 1997), *citing Goetz v. Farm Credit Services*, 927 F.2d 398, 405 (8th Cir.1991).

Having carefully analyzed each piece of evidence upon which plaintiff relies, the Court concludes as a matter of law that plaintiff has failed to make the additional showing of age discrimination required to satisfy the requirements of the prima facie case in the RIF context, failed to create a genuine dispute of fact concerning pretext in his selection for termination, and failed to demonstrate an ability to adduce sufficient evidence for a reasonable trier of fact to infer discrimination. For all the foregoing reasons, defendant is entitled to summary judgment on plaintiff's claims of age discrimination under both the ADEA and the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. # 24] is granted.

---

6. Plaintiff's argument that defendant plotted to lay-off the oldest employees under age fifty-five to avoid reporting them to the EEOC is also without merit. Because the law does not protect employ-ees because they are too young, plaintiff cannot prove age discrimination based upon defendant's retention of older individuals.